JOHN D. TENNERT III (NSB No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG P.C.
9275 W. Russell Road, Suite 240
Las Vegas, NV 89148
Telephone: 702.692.8000
Facsimile: 702.692.8099

ERIC BALL (admitted *pro hac vice*)
eball@fenwick.com
KIMBERLY CULP (admitted *pro hac vice*)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

MOLLY R. MELCHER (admitted *pro hac vice*)
mmelcher@fenwick.com
ANTHONY M. FARES (admitted pro hac vice)
afares@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

*Attorneys for Plaintiff*
*Yuga Labs, Inc.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:23-cv-00111-JCM-NJK |
| Plaintiff, | **DECLARATION OF KIMBERLY CULP IN SUPPORT OF PLAINTIFF YUGA LABS, INC.'S APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST RYAN HICKMAN** |
| v. | |
| RYAN HICKMAN, | |
| Defendant. | |

I, Kimberly Culp, declare:

1.      I am an attorney admitted *pro hac vice* in this case and am an attorney with the law firm of Fenwick & West LLP, counsel for Plaintiff Yuga Labs, Inc. ("Plaintiff" or "Yuga Labs") in the above-captioned matter.  I make this declaration based on my own personal knowledge.  If called as a witness, I could testify competently to the facts set forth herein.

2.      I submit this declaration in support of Plaintiff's Application for Entry of Default Judgment Against Ryan Hickman.

3.      In September 2022, in the matter of *Yuga Labs, Inc. v. Ryder Ripps and Jeremy Cahen,* Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal.) ("*Ripps* matter"), my firm caused a subpoena to be served on Mr. Hickman for documents.  I am counsel of record in the *Ripps* matter.  Request No. 9 in that subpoena asked Mr. Hickman to produce "[d]ocuments sufficient to show royalties you earned from the sale of RR/BAYC NFTs."

4.      On December 7, 2022, in the *Ripps* matter, I deposed Ryan Hickman regarding his involvement in Mssrs. Ripps' and Cahen's commercialization of the infringing RR/BAYC NFT.  In particular, questioned Mr. Hickman regarding his work developing the rrbayc.com website, the RRBAYCRSVP smart contract software, and the Ape Market.  (Attached hereto as **Exhibit A** is a true and correct copy of excerpts from that deposition.)  I introduced Mr. Hickman's responses to the September 2022 subpoena as Exhibit 7 to his deposition.  (Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from Exhibit 7 to Mr. Hickman's deposition showing his response to Request No. 9 in response to the September 2022 subpoena.)  In response to Request No. 9 to the September subpoena, Mr. Hickman responded that although he did not earn royalties, he was paid to make the rrbayc.com website and RRBAYC RSVP smart contract software.  Mr. Hickman confirmed at his deposition that he was paid 15% of the proceeds of the sale of the infringing RR/BAYC NFTs.

5.      On March 26, 2023, I contacted Mr. Hickman at the same email he had used to communicate with me previously, including in the days prior in relation to the *Ripps* matter.  In my March 26, email to Mr. Hickman, I notified him of this Court's entry of default against him.  I

FENWICK & WEST LLP
ATTORNEYS AT LAW

attached to my email copies of the clerk's entry of default (ECF No. 21) and the Court's Order granting Yuga Labs' motion for entry of default (ECF No. 20).  Among other things, I notified Mr. Hickman of Yuga Labs' intent to seek damages of $193,863.70, its costs and attorneys' fees (including its fees associated with bringing this motion for default judgment), and injunctive relief through a motion for default judgment seeking such relief.

6.     On March 28, 2023, Mr. Hickman responded to my March 26 email.

7.     No resolution was reached as to this matter, and I informed Mr. Hickman of our intent to move forward with our motion for default judgment.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 31, 2023.


/s/      *Kimberly Culp*
         Kimberly Culp

1

## EXHIBIT LIST

| Exhibit No. | Description |
|---|---|
| A. | Excerpts from December 7, 2022 Deposition of Ryan Hickman |
| B. | Excerpt from Exhibit 7 to Mr. Hickman's deposition showing his response to Request No. 9 in response to the September 2022 subpoena |

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

# Exhibit A

# Exhibit A

CONFIDENTIAL

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3

4    YUGA LABS, INC.,                )

                                     )

5                   Plaintiff,       )

                                     )

6    vs.                             )Case No.

                                     )2:22-cv-04355-JFW-JEM

7    RYDER RIPPS and JEREMY          )

     CAHEN,                          )

8                                    )

                    Defendants.      )

9    _____)

10

11

12                   CONFIDENTIAL

13        VIDEOTAPED DEPOSITION OF RYAN HICKMAN

14         Taken on Wednesday, December 7, 2022

15    By a Certified Stenographer and Legal Videographer

16                 At 9:11 a.m.

17        At 9275 West Russell Road, Suite 240

18                Las Vegas, Nevada

19

20

21

22

23        Stenographically reported by:

24        Holly Larsen, NV CCR 680, CA CSR 12170

25

                                     Page 1

CONFIDENTIAL

```
 1    APPEARANCES:
 2    For the Plaintiff:
 3            FENWICK & WEST, LLP
              BY:  KIMBERLY I. CULP, ESQ.
 4            BY:  ANTHONY M. FARES, ESQ.
              801 California Street
 5            Mountain View, California 94041
              650.988.8500
 6            kculp@fenwick.com
 7    For the Defendants:
 8            WILMERHALE
              BY:  DEREK A. GOSMA, ESQ.
 9            350 South Grand Avenue
              Suite 2400
10            Los Angeles, California 90071
              213.443.5300
11            derek.gosma@wilmerhale.com
12    The Legal Videographer:
13            SAMUEL CAMACHO
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

CONFIDENTIAL

```
 1                      I N D E X

 2    WITNESS                                  PAGE

 3    RYAN HICKMAN

 4         Examination by Ms. Culp          10, 302

           Examination by Mr. Gosma        275, 304

 5

 6

 7

 8

 9                    E X H I B I T S

10    NUMBER                                   PAGE

11    Exhibit 1       Subpoena                   19

12    Exhibit 2       Subpoena                   21

13    Exhibit 3       Email chain                22

14    Exhibit 4       Email                      30

15    Exhibit 5       Email chain                33

16    Exhibit 6       Email                      33

17    Exhibit 7       Email                      34

18    Exhibit 8       Group chat                 41

19    Exhibit 9       Group chat                 46

20    Exhibit 10      Group chat                 51

21    Exhibit 11      Group chat                 57

22    Exhibit 12      Group chat                 62

23    Exhibit 13      Tweet                      67

24    Exhibit 14      Group chat                 72

25    Exhibit 15      Group chat                 75
```

Page 3

| Exhibit 16 | Group chat with Letter of Authorization | 87 |
| Exhibit 17 | Group chat | 90 |
| Exhibit 18 | Group chat | 94 |
| Exhibit 19 | Group chat | 96 |
| Exhibit 20 | Group chat | 103 |
| Exhibit 21 | Group chat | 125 |
| Exhibit 22 | Group chat | 130 |
| Exhibit 23 | Group chat | 135 |
| Exhibit 24 | Group chat | 141 |
| Exhibit 25 | Etherscan | 143 |
| Exhibit 26 | Group chat | 144 |
| Exhibit 27 | Web page | 146 |
| Exhibit 28 | Web page | 149 |
| Exhibit 29 | Web page | 153 |
| Exhibit 30 | Group chat | 155 |
| Exhibit 31 | Group chat | 158 |
| Exhibit 32 | Group chat | 162 |
| Exhibit 33 | Group chat | 168 |
| Exhibit 34 | Group chat | 170 |
| Exhibit 35 | Web page | 172 |
| Exhibit 36 | Etherscan | 174 |
| Exhibit 37 | Group chat | 179 |
| Exhibit 38 | Group chat | 183 |
| Exhibit 39 | Group chat | 187 |

1    Exhibit 40        Group chat                190
2    Exhibit 41        Group chat                191
3    Exhibit 42        Group chat                194
4    Exhibit 43        Tweet                     196
5    Exhibit 44        Group chat                197
6    Exhibit 45        Tweet                     199
7    Exhibit 46        Tweet                     204
8    Exhibit 47        Group chat                205
9    Exhibit 48        Group chat                219
10   Exhibit 49        Group chat                221
11   Exhibit 50        Group chat                226
12   Exhibit 51        Group chat                231
13   Exhibit 52        Group chat                233
14   Exhibit 53        Group chat                234
15   Exhibit 54        Group chat                236
16   Exhibit 55        Group chat                238
17   Exhibit 56        Group chat                240
18   Exhibit 57        Group chat                241
19   Exhibit 58        Group chat with Letter of  244
                       Authorization
20
     Exhibit 59        Group chat                246
21
     Exhibit 60        Group chat                250
22
     Exhibit 61        Group chat                250
23
     Exhibit 62        Group chat                251
24
     Exhibit 63        Group chat                252
25

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

```
1    Exhibit 64      Group chat                256

2    Exhibit 65      Group chat                260

3    Exhibit 66      Group chat                261

4    Exhibit 67      Group chat                262

5    Exhibit 68      Group chat                263

6    Exhibit 69      Group chat                264

7    Exhibit 70      Group chat                267

8    Exhibit 71      Group chat                270

9    Exhibit 72      Etherscan                 270

10   Exhibit 73      Tweet                     272
```

```
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page  6

```
 1                   P R O C E E D I N G S

 2                          -oOo-

 3

 4              THE VIDEOGRAPHER:  Good morning.  We are

 5      going on the record at 9:11 a.m., December 7, 2022.

 6                   Please note that the microphones are

 7      sensitive and may pick up whispering and private

 8      conversations.  Please mute your phones at this

 9      time.  Audio and video recording will continue to

10      take place unless all parties agree to go off the

11      record.

12                   This is Media Unit 1 of the

13      video-recorded deposition of Ryan Hickman taken by

14      counsel for plaintiff in the matter of Yuga Labs,

15      Inc., versus Ryder Ripps and Jeremy Cahen, filed in

16      the United States District Court of the Central

17      District of California, Case Number

18      2:22-CV-04355-JFW-JEM.  The location of the

19      deposition is 9275 West Russell Road, Suite 240,

20      Las Vegas, Nevada.

21                   My name is Samuel Camacho representing

22      Veritext, and I am the videographer.  The court

23      reporter is Holly Larsen from the firm Veritext.

24                   I am not authorized to administer an

25      oath, I am not related to any party in this action,
```

Page 7

CONFIDENTIAL

1    nor am I financially interested in the outcome.  If

2    there are any objections to proceeding, please state

3    them at the time of your appearance.

4              Counsel and all present, including

5    remotely, will now state their appearances and

6    affiliations for the record, beginning with the

7    noticing attorney.

8              MS. CULP:  Good morning.  I'm Kimberly

9    Culp with the law firm Fenwick & West representing

10   Yuga Labs.

11             MR. FARES:  Good morning.  I'm Anthony

12   Fares with the law firm Fenwick & West representing

13   Yuga Labs.

14             MR. GOSMA:  This is Derek Gosma of

15   WilmerHale representing the Defendants, Mr. Ripps

16   and Mr. Cahen.

17             THE VIDEOGRAPHER:  Will the court

18   reporter please swear in the witness and counsel may

19   proceed.

20   Whereupon,

21                  RYAN HICKMAN,

22   having been first duly sworn to testify to the

23   truth, was examined, and testified as follows:

24   ///

25   ///

1    with a, I believe, PDF of the information that I

2    collected.

3        Q.      We will look at that document in a

4    moment, but let me try a different question.

5                Does Exhibit 6, if you look at the dates

6    and compare them between Exhibit 5 and Exhibit 6,

7    refresh your recollection that by October 12th you

8    were aware that Fenwick & West had taken the

9    position that the documents you had already provided

10   didn't sufficiently comply with the subpoena?

11       A.      Say that again, please.

12               MS. CULP:  Madam Court Reporter, can you

13   read back the question.

14               (The question was read.)

15               THE WITNESS:  I see.  So I haven't seen

16   these emails or read these emails.  So the -- yeah,

17   I haven't -- the emails that I didn't respond to are

18   emails that I have never read before.

19   BY MS. CULP:

20       Q.      You received but did not open in your

21   inbox; correct?

22       A.      Correct.

23               MS. CULP:  Next in order is Exhibit 7.

24               (Exhibit 7 marked.)

25   ///

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

1    BY MS. CULP:

2        Q.      You had just mentioned an email that you

3    sent with your documents.  Is that Exhibit 7 that

4    we've just put in front of you?

5        A.      Correct.

6        Q.      And that was the production that you

7    made in response to the September subpoena which is

8    Exhibit 2?

9        A.      Correct.

10       Q.      I want to go back to Exhibit 1.  I know

11   you're starting to accumulate the pile I warned you

12   of.  If you can find Exhibit 1 and get that in front

13   of you.

14       A.      Yes, I have it in front of me.

15       Q.      Do you have Exhibit 1 in front of you?

16       A.      Yes.

17       Q.      Thank you.  Can you please go to

18   Attachment A.  And the pages in Attachment A are

19   numbered.  I'd like you to turn to numbered page 6

20   of Attachment A to Exhibit 1.  Numbered page 6.

21       A.      Page 6.

22       Q.      Are you there?

23       A.      Yes, I am.

24       Q.      Do you see Document Request Number 1?

25       A.      Yes.

1    Q.    What do you understand Document Request

2    Number 1 to be seeking from you?

3    A.    Some way for me to export information

4    from Discord and provide it.

5    Q.    Were there communications on Discord

6    that relate to RR/BAYC NFTs, BAYC NFTs, or Yuga

7    Labs?

8    A.    Yes.

9    Q.    I guess let's establish just some

10   definitions.   I think we're communicating with each

11   other, but let's just make sure.

12         When I say "RR/BAYC NFTs," what do you

13   understand?

14   A.    I understand the specific contract

15   address on the Ethereum blockchain for that project.

16   Q.    And that project was called RR/BAYC NFT

17   to sort of the public if you will?

18   A.    Correct.

19   Q.    And if I say "BAYC NFTs," what do those

20   refer to?

21   A.    A specific contract address on the

22   Ethereum blockchain.

23   Q.    And those are Bored Ape Yacht Club NFTs

24   that were created by my client, Yuga Labs?

25   A.    Correct.

1      Q.      So you understand BAYC, the letters, to

2    be the acronym for Bored Ape Yacht Club?

3      A.      Correct.

4      Q.      And do you know who Yuga Labs is?

5      A.      Yes, I do.

6      Q.      Okay.  And you understand Yuga Labs to

7    be the business behind Bored Ape Yacht Club?

8      A.      Yes, I understand that.

9      Q.      So going back to Request Number 1 that's

10   on page 6 of Attachment A to Exhibit 1, there were

11   Discord communications that you were a party to that

12   related to, you know, one or all of the things that

13   are listed here?

14     A.      Yes.

15     Q.      Tell me what those Discord

16   communications were in terms of the channel, if the

17   channel had a name, or to whom you might have been

18   communicating with if it was a one-to-one

19   communication.

20     A.      There were communications with the

21   creator, the development team, and -- so myself,

22   Tom, Jeremy, and Ryder had a channel.  I believe it

23   had a name.  I'm not certain if it had a name, but

24   it was a group chat.

25              Then myself and Tom had a group chat, a

Page 37

CONFIDENTIAL

```
 1              THE VIDEOGRAPHER:  Going off the record
 2     at 12:18 p.m.
 3              (The lunch break was taken.)
 4              THE VIDEOGRAPHER:  We're back on the
 5     record.  Time is 1:07 p.m.
 6     BY MS. CULP:
 7        Q.     So we're getting the next exhibit in
 8     order, Mr. Hickman.  You're still under oath even
 9     though we took a lengthy lunch break.  Just like
10     with all our breaks, the court reporter is not going
11     to administer the oath every time.
12              So do you understand that?
13        A.     I understand that.
14        Q.     Thanks.  We were talking about your
15     initial conversations before the development process
16     began with respect to the tool to solve the
17     bottleneck issue and also the Ape Market.  And I had
18     some questions about the financial arrangement, and
19     I just want to continue to talk about the financial
20     arrangement real quick.
21              MS. CULP:  This will be next in order.
22              (Exhibit 21 marked.)
23     BY MS. CULP:
24        Q.     So Exhibit 21 is in front of you.  This
25     is another grab from Discord, the Team Ape Market
```

Page 125

CONFIDENTIAL

1 Discord.  You can see Mr. Cahen's message in the

2 middle of this on the 19th of May at 10:46 a.m.

3     Do you see that message?

4  A.  10:46 a.m., yes.

5  Q.  And then a few lines down, "And

6 @middlemarch" -- which is Mr. Lehman -- "writer has

7 agreed to offer Hwonder" -- which is you --

8  A.  Uh-huh.

9  Q.  -- "the exact same partnership as us."

10     Do you see that?

11  A.  Yes.

12  Q.  He goes on.  "So we are all equally

13 incentivized 15 percent of mint plus 15 percent of

14 Ryder's share of royalties."

15     Do you see that?

16  A.  Yes.

17  Q.  Was that the ultimate financial terms

18 that the four of you came together around for your

19 work on the RSVP contract?

20  A.  It is the right financial arrangement.

21 I'm not certain of -- not really aware of

22 understanding it as, like, a business partnership.

23 But definitely being compensated 15 percent of the

24 proceeds and -- so yes.

25  Q.  And I want to unpack that so I'm

Page 126

1    understanding your testimony.

2          That economic arrangement here is

3    consistent with the arrangement that the four of you

4    reached?

5          A.     Correct.

6          Q.     But I also understand your testimony

7    that it sounds like you did not have an

8    understanding that there was a partnership formed

9    between the four of you; is that correct?

10         A.     Very correct.

11         Q.     Did you understand -- did you have any

12    understanding if there was any legal relationship

13    between you and Mr. Ripps and Mr. Cahen and

14    Mr. Lehman in this context?

15         A.     Not at all.

16         Q.     There's a reference to 15 percent of

17    Ryder's share of royalties.  Can you explain what

18    that refers to; particularly, the relationship of

19    royalties?  Like, what did you understand

20    "royalties" to mean here?

21         A.     I believe -- I'm not a hundred percent

22    certain, but I believe the foundation contract

23    forces a royalty payment.  I'm not a hundred

24    percent.  But I believe that that contract does

25    that.

```
 1           Q.      The foundation contract for the
 2    RR/BAYC NFT?
 3           A.      Correct.
 4           Q.      You can turn back to what you had
 5    produced to us that's Exhibit 7.
 6           A.      Bear with me.  Yes.
 7           Q.      It's your response to Document Request
 8    Number 9, if you can turn to that one.  We're on the
 9    same page.  So Exhibit 7, and then Document
10    Request 9.  It looks like you were at 6.
11                   Do you see Document Request 9?
12           A.      Yes.
13           Q.      You write, "I earned zero royalties."
14                   Can you help me unpack how you're using
15    "royalties" in your response here versus how
16    Mr. Cahen is using "royalties" in Exhibit 21?
17                   Are the terms being used the same way,
18    or is there different language being used by you in
19    the one document and Mr. Cahen in the other?
20           A.      I don't specifically know what
21    "royalties" mean here.  It says "Ryder's share of
22    royalties."  The project is zero percent royalties.
23    I'm only making a guess that it's referring to the
24    foundation contract that forces the royalties.
25                   In this reference I'm specifically
```

Page 128

1    stating that I'm a developer.  I make software.  I

2    charge to make software.  I have a record, a

3    history, of charging to make the software.  My

4    financial arrangement for this whole thing is about

5    as a software developer being compensated for making

6    software.

7         Q.     Your records show your sort of net

8    payment was 142.35 ETH?

9         A.     Yes.

10        Q.     Do you recall what that translated to

11   into dollars when you made the withdrawals?

12        A.     I never actually withdrew those funds.

13   That wallet was compromised.

14        Q.     Can you explain that?  What do you mean,

15   "that wallet was compromised"?

16        A.     I was developing something else, and I

17   had a lot going on.  I installed a package.  It's a

18   support software.  And the package had a rat in it.

19   A rat is a type of -- it's not a virus, but it's

20   hidden malicious code that took the private keys

21   from the deployment and took this and a whole lot

22   more.

23        Q.     The ETH out of your wallet?

24        A.     Out of that wallet, yes.

25        Q.     So the 142.35 ETH was transferred to you

Page 129

1    and then stolen by somebody from that wallet?

2         A.        Correct.

3         Q.        Understood.

4                   (Exhibit 22 marked.)

5    BY MS. CULP:

6         Q.        Exhibit 22 has been placed in front of

7    you.  At the middle of 22 you'll see that Mr. Lehman

8    writes on the 20th of May at 7:09 a.m., "There's the

9    foundation royalties, though, when this sells on

10   their marketplace."

11        A.        I see.

12        Q.        Is that consistent with your testimony

13   that there were royalties built into the Foundation

14   contract for the RR/BAYC NFTs?

15        A.        There's not royalties in the Foundation

16   NFT ERC 721 contract.

17                  The Foundations are on -- the royalties

18   are automatically enforced on Foundation's

19   marketplace, which is a separate thing.  And people

20   who get the NFT choose where they want to sell it on

21   a secondary market.  It could include Foundation.

22   So when it sold on Foundation, it produces a

23   royalty.

24        Q.        Understood.

25        A.        But I don't know if that's what he's

                                        Page 130

1    order, and the protective order affords a third

2    party the right to designate their documents as

3    confidential.  My suggestion is we take this offline

4    and off the record.  We'll need to meet and confer

5    with that third party as to whether or not they will

6    de-designate their documents.  Then let's have that

7    broader conversation, because it impacts the

8    designation of this deposition.

9             MR. GOSMA:  Understood.  With that, I

10   have nothing further.  From my perspective, we can

11   go off the record.

12            MS. CULP:  From mine as well.

13            THE WITNESS:  I had a quick question.

14            MR. GOSMA:  Sure.  We can answer it on

15   the record, I suppose.

16            THE WITNESS:  Am I allowed to have a

17   copy of this?

18            MR. GOSMA:  Yes, you will be able to get

19   a copy of it.

20            THE WITNESS:  Thank you.

21            THE VIDEOGRAPHER:  And this concludes

22   the deposition.  We're going off the record at

23   6:27 p.m., and this concludes today's testimony

24   given by Ryan Hickman.  The total number of media

25   used was eight and will be retained by Veritext.

Page 307

1        Thank you.

2                    (Proceedings concluded at 6:27 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 308

```
 1                    CERTIFICATE OF REPORTER
 2      STATE OF NEVADA     )
                            )SS
 3      COUNTY OF CLARK     )
 4           I, Holly Larsen, a duly certified court
        reporter licensed in and for the State of Nevada, do
 5      hereby certify:
 6           That I reported the taking of the deposition of
        the witness, Ryan Hickman, at the time and place
 7      aforesaid;
 8           That prior to being examined, the witness was
        by me duly sworn to testify to the truth, the whole
 9      truth, and nothing but the truth;
10           That I thereafter transcribed my shorthand
        notes into typewriting and that the typewritten
11      transcript of said deposition is a complete, true,
        and accurate record of testimony provided by the
12      witness at said time to the best of my ability.
13           I further certify (1) that I am not a relative
        or employee of counsel of any of the parties; nor a
14      relative or employee of the parties involved in said
        action; nor a person financially interested in the
15      action; nor do I have any other relationship with
        any of the parties or with counsel of any of the
16      parties involved in the action that may reasonably
        cause my impartiality to be questioned; and (2) that
17      transcript review pursuant to FRCP 30(e) was
        requested.
18
             IN WITNESS HEREOF, I have hereunto set my hand
19      in the County of Clark, State of Nevada, this 21st
        day of December, 2022.
20
21
22
23                    Holly Larsen
24
25                    HOLLY LARSEN, CCR NO. 680


                                                 Page 309
```

CONFIDENTIAL

```
 1                        ERRATA SHEET

 2

 3      I declare under penalty of perjury that I have read

 4      the foregoing _____ pages of my testimony, taken on

 5      _____ (date) at _____ (city),

 6      _____ (state), and that the same is a true

 7      record of the testimony given by me at the time and

 8      place herein above set forth, with the following

 9      exceptions:

10

11      Page   Line   Should read:        Reason for change:

12      _____  _____  _____  _____

13      _____  _____  _____  _____

14      _____  _____  _____  _____

15      _____  _____  _____  _____

16      _____  _____  _____  _____

17      _____  _____  _____  _____

18      _____  _____  _____  _____

19      _____  _____  _____  _____

20      _____  _____  _____  _____

21      _____  _____  _____  _____

22      _____  _____  _____  _____

23      _____  _____  _____  _____

24      _____  _____  _____  _____

25      _____  _____  _____  _____
```

Page 310

CONFIDENTIAL

```
 1                  ERRATA SHEET (Continued)

 2      Page   Line     Should read:       Reason for change:

 3      ____   ____   _____   _____

 4      ____   ____   _____   _____

 5      ____   ____   _____   _____

 6      ____   ____   _____   _____

 7      ____   ____   _____   _____

 8      ____   ____   _____   _____

 9      ____   ____   _____   _____

10      ____   ____   _____   _____

11      ____   ____   _____   _____

12      ____   ____   _____   _____

13      ____   ____   _____   _____

14      ____   ____   _____   _____

15      ____   ____   _____   _____

16      ____   ____   _____   _____

17      ____   ____   _____   _____

18      ____   ____   _____   _____

19      ____   ____   _____   _____

20

21      Date: _____      _____

22                             Signature of Witness

23

24                             _____

25                             Name Typed or Printed

                                            Page 311
```

1    RYAN HICKMAN

2    260 Sidewinder Street, Henderson, NV  89012

3                                    DECEMBER 21, 2022

4    RE: YUGA LABS, INC. v. RYDER RIPPS

5    DECEMBER 7, 2022, RYAN HICKMAN, JOB NO. 5597850

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived – Reading & Signature was waived at the

24      time of the deposition.

25

                                              Page 312

1  _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2     Transcript – The witness should review the transcript and

3     make any necessary corrections on the errata pages included

4     below, noting the page and line number of the corrections.

5     The witness should then sign and date the errata and penalty

6     of perjury pages and return the completed pages to all

7     appearing counsel within the period of time determined at

8     the deposition or provided by the Federal Rules.

9  __ Federal R&S Not Requested – Reading & Signature was not

10    requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 313

```
 1   YUGA LABS, INC. v. RYDER RIPPS

 2   RYAN HICKMAN, JOB NO. 5597850

 3                  E R R A T A   S H E E T

 4   PAGE_____ LINE_____ CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____ CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____ CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____ CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____ CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____ CHANGE_____

20   _____

21   REASON_____

22

23   _____        _____

24   WITNESS                              Date

25

                                        Page 314
```

# Exhibit B

# Exhibit B

# Document Request 9

I earned zero royalties. There are no documents associated to any royalties. I was compensated for the development of a token reservation system. The gross total 158.28 ETH:

| Sender | Amount | | Latest Date |
|---|---|---|---|
| 0xee969b688442c2d58... | 158.28  ETH | $21814.53 | 2022-06-25 |

Of which 15.93 ETH was returned for gas cost:

| | | | |
|---|---|---|---|
| 0x592814ff14e030b51f6... | 15.93  ETH | $26280.83 | 2022-07-27 |

Net to build reservation system: 142.35 ETH