JOHN D. TENNERT III (NSB No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG P.C.
9275 W. Russell Road, Suite 240
Las Vegas, NV  89148
Telephone: 702.692.8000
Facsimile: 702.692.8099

ERIC BALL (CSB No. 241327) (*pro hac vice*)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839) (*pro hac vice*)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950) (*pro hac vice*)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065) (*pro hac vice*)
afares@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| YUGA LABS, INC., <br><br> Plaintiff, <br><br> v. <br><br> RYAN HICKMAN, <br><br> Defendant. | Case No.: 2:23-cv-00111-JCM-NJK <br><br> **PLAINTIFF YUGA LABS, INC.'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** |

FENWICK & WEST LLP
ATTORNEYS AT LAW

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that pursuant to 15 U.S.C. 1117(a), Federal Rule of Civil Procedure 54(d)(2), Local Rule 54-14, and this Court's August 16, 2023, Order Granting Yuga Labs' Motion for Default Judgment (Dkt. No. 26), Plaintiff Yuga Labs, Inc. ("Yuga Labs") hereby moves this Court for an order awarding Yuga Labs its reasonable attorneys' fees in the amount of $47,178.44 incurred in connection with its efforts in litigating this case against Defendant Ryan Hickman ("Hickman").

Yuga Labs bases the motion on this notice and motion, the accompanying memorandum of points and authorities, the supporting declaration and exhibits that accompany the motion, all other pleadings and papers on file in this action, any matter of which this Court may take judicial notice, and any other evidence and materials as Yuga Labs may present to the Court before or during the hearing.

Dated:   September 11, 2023   FENNEMORE CRAIG P.C.


By: */s/ John D. Tennert III*
      JOHN D. TENNERT III (NSB 11728)

and

FENWICK & WEST LLP
ERIC BALL (CSB 241327)
KIMBERLY CULP (CSB 238839)
ANTHONY M. FARES (CSB 318065)

*Attorneys for Plaintiff Yuga Labs, Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This Court found Ryan Hickman liable for his willful infringement of Yuga Labs' BAYC Marks and determined that Yuga Labs "has sufficiently proven its entitlement to attorney fees and costs under 17 U.S.C. § 1117(a)."  Order on Motion for Default (Dkt. No. 26) ("Order") at 7; *see also* Judgment and Order for Permanent Injunction (Dkt. No. 30) ("Judgment") ("For the reasons set forth in the Court's Order on Motion for Default (Dkt. No. 26), it is hereby ordered that Defendant Hickman pay to Plaintiff . . . Attorneys' fees").  Pursuant to this Order, the Judgment, and for the reasons set forth below, Yuga Labs is entitled to recover $47,178.44 in attorneys' fees related to this lawsuit.

Mr. Hickman and his business partners sought to profit from selling counterfeit Yuga Labs products.  Yuga Labs is the creator behind one of the world's most well-known and successful NFT collections, known as the Bored Ape Yacht Club ("BAYC"), and uses its BAYC Marks[1] in connection with its products and services nationwide and internationally through multiple platforms, NFT marketplaces, and social media.[2]  In response to BAYC's popularity, Mr. Hickman and his business partners launched a business venture to scam consumers into purchasing their "RR/BAYC" NFTs, which use the very same BAYC Marks and underlying images as BAYC NFTs.  Order at 2.  As part of this profit-making scheme, Mr. Hickman created and commercialized websites and a smart contract to sell the intentionally misleading RR/BAYC NFTs to the average consumer, oversaw and promoted their sales, knowing that they bore a misleading label of "Bored Ape Yacht Club (BAYC)," and developed a marketplace—the "Ape Market"—to sell the infringing NFTs alongside authentic BAYC NFTs.  *Id.*  Mr. Hickman's use of the BAYC Marks has caused and continues to cause actual confusion in the marketplace, which has resulted in damage and irreparable injury to Yuga Labs' hard-earned reputation.

---

[1] Yuga Labs' BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and Ape Skull Logo trademarks.

[2] As another federal court found, these marks are valid and protectable.  *Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 3316748, at *4-*7 (C.D. Cal. Apr. 21, 2023).

FENWICK & WEST LLP
ATTORNEYS AT LAW

To put an end to Mr. Hickman's blatant and willful trademark infringement, Yuga Labs brought this lawsuit against him on January 20, 2023. *See* Dkt. No. 1 (Complaint for False Designation of Origin and Cybersquatting). Despite ample notice of this lawsuit (*see, e.g.,* Dkt. No. 18 (Declaration of Service)), Mr. Hickman failed to file a responsive pleading to Yuga Labs' Complaint within the time prescribed by Federal Rule of Civil Procedure 12(a) or any time thereafter; accordingly, Yuga Labs moved for an entry of default against Mr. Hickman (Dkt. No. 19) and subsequently filed its motion for default judgment (Dkt. No. 23).

More than two full months after admittedly receiving notice of this lawsuit, as evinced by his public Tweets and statements to the media about the lawsuit, Mr. Hickman sent a letter to the Court on April 12, 2023, opposing Yuga Labs' motion for default judgment (Dkt. No. 24), which the Court "liberally" construed to Mr. Hickman's benefit. Dkt. No. 26 at 4. Yuga Labs filed a reply to Mr. Hickman's opposition. After the motion for default judgment was fully briefed, on August 16, 2023, the Court granted Yuga Labs' motion for default judgment, awarding Yuga Labs $193,863.70 in monetary damages as well as injunctive relief. *See* Dkt. No. 26 at 7-8; *see also* Dkt. No. 30 at 2. The Court also found that Mr. Hickman acted willfully and intentionally in infringing the BAYC Marks, and therefore determined that Yuga Labs is entitled to its reasonable attorneys' fees and costs. *Id.* at 7; *see also Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Yuga Labs' attorneys' fees sought in this motion are reasonable based on the skill and experience of the attorneys involved, as well as the demands of the case. The Court should not adjust these fees downward in light of the *Kerr* factors, which favor awarding Yuga Labs its full attorneys' fees. Moreover, Yuga Labs is entitled to reimbursement of its minor and reasonable costs in this action, as set forth in the concurrently filed Bill of Costs.

**II.     LEGAL STANDARD**

Under Federal Rule of Civil Procedure 54, a motion for attorneys' fees must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award" and "state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2). Once a party establishes its entitlement to attorneys' fees, the court must determine the reasonableness of such

an award. *In re USA Commercial Mortgage Co.*, No. 2:07–CV–892–RCJ– GWF, 2013 WL 3944184, at *18 (D. Nev. July 30, 2013). This requires the Court to perform the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB–P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court multiplies "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate" to reach the so-called "lodestar figure." *Hensley*, 461 U.S. at 433. After making that computation, the court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*See Fischer*, 214 F.3d at 1119 (citation omitted); *see also* LR 54-14.[3] Only in "rare and exceptional cases" should a court adjust the lodestar figure. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (internal quotation marks omitted); *Fischer*, 214 F.3d at 1119 n.4 ("A strong presumption exists that the lodestar figure represents a reasonable fee, and therefore, it should only be enhanced or reduced in rare and exceptional cases.") (internal quotation marks omitted).

### III.     ITEMIZATION OF ATTORNEYS' FEES

District of Nevada Local Rule 54-14 requires that a motion for fees must include "[a] reasonable itemization and description of the work performed," "[a]n itemization of all costs sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-13," and "an affidavit from the attorney responsible for the billings in the case authenticating the information contained in the motion and confirming that the bill was reviewed and edited and

---

[3] L.R. 54-14 also requires parties to provide "[a]ny other information the court may request." Yuga Labs can supplement this motion with any additional information that the Court requests.

that the fees and costs charged are reasonable." Yuga Labs has provided all of this information. *See* Ball Decl. Ex. 5 (itemization and description of work performed), ¶¶ 3, 19-30 (authentication and confirmation of billings). Yuga Labs is not seeking any costs as part of its fee award that are not otherwise taxable pursuant to Local Rule 54-1 through 54-13. *Id.* ¶ 31. The costs that Yuga Labs seeks to recover from Mr. Hickman are set forth in the concurrently filed Bill of Costs, pursuant to Local Rule 54-1. *Id.*

Yuga Labs seeks to recover a total of $47,178.44 in reasonable and necessary attorneys' fees related to this litigation. *See* Ball Decl. Exs. 4, 5, ¶ 29. This amount reflects certain discounts between 15-17.5% from the prevailing market rate for Fenwick & West LLP's ("Fenwick") fees. *Id.* ¶ 24. In addition, Yuga Labs is voluntarily not seeking to recover fees for time entries in which multiple tasks were combined into a single entry or fees incurred by Fenwick billing professionals who spent less than five hours working on this case, which account for more than $10,000 in fees billed to Yuga Labs for this matter. *Id.* ¶¶ 26-28. While Yuga Labs believes it could justify this amount and recover more, it is reducing its fee application to exclude these fees in order to avoid any doubt about the reasonableness of this fee request. *Id.*

## IV.   ARGUMENT AND AUTHORITIES

The total amount of attorneys' fees incurred by Yuga Labs is reasonable in light of the work performed by their counsel of record and their counsel's qualifications, and the circumstances do not warrant a reduction in the total fee award.

### A.   Yuga Labs' Fees Are Reasonable.

"Federal courts employ the 'lodestar' method to determine a reasonable attorney's fees award . . ." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). To perform this analysis, "a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Id.* Here, the fees Yuga Labs seeks are reasonable for several reasons. First, the hourly rate charged by Fenwick reflects the prevailing market rate (with discounts) for highly skilled legal representation and the specialized qualifications of Fenwick's attorneys. Second, the number of hours spent litigating this case are reasonable given the stakes

of the dispute, the novelty of issues, and the high level of attention it deserved. The amounts requested are reasonable and consistent with fee awards in similar cases.

### 1. The hourly rates of Yuga Labs' attorneys are reasonable.

Courts consider the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). To inform and assist the court in the exercise of its discretion, "[t]he party seeking an award of fees should submit evidence supporting the . . . rates claimed." *Hensley*, 461 U.S. at 433; *see also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Rates evidenced through affidavits are normally deemed to be reasonable. *Blum*, 465 U.S. at 895-96 n.11; *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

Attorneys for Fenwick are requesting court approval of rates between $544.00 and $1,135.00 per hour in this matter. *See* Ball Decl. ¶ 29. These rates reflect the attorneys' prevailing market rate for the November 2022 billing period, a 15% discount on the prevailing market rate during the December 2022 billing period, and a 17.5% discount on the prevailing market rate during the January 2023 – April 2023 billing periods. *See Id.* ¶¶ 7-9, 24.

A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). While the relevant community generally is defined as the forum in which the court sits (Nevada), the Court may consider rates outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Moreover, "[i]n the Ninth Circuit, an award of attorney's fees based solely on past fee awards is

considered unreasonable, because "holding the line" at a flat rate does not define the relevant 'market rate.'" *Mancini v. Dan P. Plute, Inc.*, 358 F. App'x 886, 889 (9th Cir. 2009). While Fenwick's rates are higher than some law firms in Nevada, these rates are standard rates for peer law firms in San Francisco and are justified due to the scarcity of Nevada counsel with the requisite experience, expertise, and specialization required to litigate this particular case. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (upholding attorneys' fees at San Francisco rates, as opposed to Sacramento rates, due to the unavailability of Sacramento law firms with the requisite expertise and experience to handle an "extremely complex" case); *see also Sierra Club v. U.S. Env't Prot. Agency*, 339 F. App'x 678, 680 (9th Cir. 2009).

*First*, the Fenwick team is uniquely qualified to handle this matter due to their familiarity with the facts and issues in this case. As explained in the Complaint and prior filings, Mr. Hickman was part of a business venture to sell scam NFTs using Yuga Labs' Marks with three other individuals: Ryder Ripps, Jeremy Cahen, and Thomas Lehman. Complaint (Dkt. No. 1); Motion for Default (Dkt. No. 23). The Fenwick team successfully litigated a lawsuit against Mr. Ripps and Mr. Cahen in the Central District of California through trial, winning a string of victories including a summary judgment order finding those defendants liable for trademark infringement and cybersquatting, and becoming intimately familiar with Mr. Hickman's involvement in the business venture. Ball Decl. ¶ 15. For example, as part of that case, the same Fenwick attorneys for whom Yuga Labs is seeking to recover its fees here took Mr. Hickman's deposition, cross-examined him at trial, and enforced a subpoena against him in the District of Nevada. *Id.* Likewise, those same Fenwick attorneys managed the litigation in the Northern District of New York against Thomas Lehman, another software developer and business partner for the business venture, successfully obtaining a consent judgment finding him liable for trademark infringement. *Id.* The facts of this lawsuit against Mr. Hickman are inextricably intertwined with the lawsuits against other members of the RRBAYC Team, relying on much of the same evidence and revolving around many of the same issues. *Id.* The unique and specialized knowledge this Fenwick team has gained has led to efficiencies litigating this case against Mr. Hickman and reduced the overall fees against Mr. Hickman. *Id.* ¶ 17. Fenwick's

hourly rates charged for these three lawsuits were the same, reflecting the national scope of the infringing activity and similarities of the three cases. *Id.* ¶ 15.

*Second*, Fenwick is a top ranked firm for intellectual property litigation, and its attorneys are based in the San Francisco Bay Area. *Id.* ¶¶ 4, 6-9. The firm has also been ranked among the leading advisors in the nation in the Fintech Legal and Blockchain and Cryptocurrencies practice areas in the Chambers FinTech guide (2023) and by The Legal 500 (2023). *Id.* ¶ 4. The rates put forth by its attorneys are below market for peer firms in the region. *Id.* ¶¶ 6-9. Moreover, comparable rates have been recognized time and again as reasonable in this and other jurisdictions. *Joyce R. v. Kijakazi*, No. 2:21-CV-01296-VCF, 2023 WL 4532829, at *2 (D. Nev. July 12, 2023) (finding $1400 hourly rate for attorneys reasonable); *Fleming v. Impax Labs., Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding hourly rates of $760-$1,325 for partners and $895-$1,150 for counsel reasonable); *AECOM Energy & Constr., Inc. v. Topolewski*, No. CV17-5398-RSWL-AGRx, 2022 WL 1469501, at *4 (C.D. Cal. May 9, 2022) (finding hourly rates of $876 for senior associate and $1,116 for partner reasonable); *Joseph S. v. Kijakazi*, No. CV 20-09138-DFM, 2023 WL 2628243, at *3 (C.D. Cal. Jan. 23, 2023) ("Exercising its discretion, the Court finds reasonable the rate of $1,600 per hour for attorney time.").

*Third*, the Fenwick attorneys involved in this case have developed expertise in NFT trademark litigation and are not aware of any law firm in Nevada with comparable expertise. Fenwick attorneys also represented Yuga Labs in other matters venued in Nevada, with Fennemore Craig P.C. ("Fennemore") as local counsel, and achieved positive outcomes for their client in those circumstances, too. *See Yuga Labs, Inc. v. Ripps et al.*, 2:23-cv-00010-APG-NJK (D. Nev. 2023); *Armijo v. Ozone Networks, Inc. et al*, 3:22-cv-00112-MMD-CLB (D. Nev. 2023). This area of law is incredibly specialized and frequently deals with cutting edge legal issues of first impression. Indeed, whether NFTs could be trademarked at all was disputed in Yuga Labs' lawsuit against Mr. Ripps and Mr. Cahen, and as a result of Fenwick's expertise and skilled advocacy, the Court found that they could. *Yuga Labs*, 2023 WL 3316748 at *4-*5. Fenwick's individual attorneys are also uniquely qualified to argue the issues in this case.

YUGA LABS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS — 8 — Case No.: 2:23-cv-00111-JCM-NJK

Mr. Ball is not only a leading trademark lawyer, but also has experience representing leaders in the blockchain and cryptocurrency space, making him uniquely suited to argue this blockchain industry trademark case. Ball Decl. ¶ 6. And Ms. Culp is also a leading intellectual property litigation attorney, teaching a class at UC Law SF (formerly UC Hastings) on the application of IP law to emerging technology. *Id.* ¶ 7. Mr. Fares and Ms. Hauh, while less experienced than Mr. Ball and Ms. Culp, are nonetheless highly qualified attorneys who have acquired specialized knowledge in the area of intellectual property litigation.

*Fourth*, Yuga Labs used skilled local counsel where expertise in the subject matter was not at issue. For example, Fennemore researched issues related to local rules, filing, and service requirements. Ball Decl. ¶ 16. Their rates, ranging from $360 to $520 per hour for attorneys and $250 per hour for a paralegal, are within the standard range for legal professionals of their skill and experience in Las Vegas, Nevada. *See* Ball Decl. ¶¶ 10-13; *see also*, *Union Pac. R.R. Co. v. Winecup Gamble, Inc.*, No. 317CV00477LRHCLB, 2023 WL 4052413, at *4 (D. Nev. June 16, 2023) (finding hourly rates ranging from $400 to $650 for attorneys and $215 to $305 for paralegals reasonable for Nevada); *Flynn v. Love*, No. 319CV00239MMDCLB, 2023 WL 3080494, at *3 (D. Nev. Apr. 25, 2023) (finding hourly rates between $300 and $650 reasonable); *Baluma S.A. v. Chow*, No. 2:20-CV-1752-KJD-EJY, 2023 WL 2844215, at *2 (D. Nev. Mar. 20, 2023) (finding hourly rates of $525 for partners and $345 for associates reasonable in Las Vegas).

The Court should approve the reasonable rates of Yuga Labs' attorneys in light of the attorneys' specialized skill, experience, and reputation in IP litigation related to NFTs and this case in particular.

### 2. The time spent by Yuga Labs' attorneys was reasonable.

In addition to evidence supporting the rates claimed, "[t]he party seeking an award of fees should submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433; *see also Jordan*, 815 F.2d at 1263. The district court is not required to do a line-by-line examination of the hours charged, "and indeed should not, become green-eyeshade accountants." *Nalder for Nalder v. United Auto. Ins. Co.*, 2:09-CV-1348-RCJ-GWF, 2014 WL 12690184, at *7-*8 (D.

Nev. June 3, 2014) (*citing Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011) (Kagan, J.)) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). Here, Yuga Labs' attorneys performed the following categories of work in successfully obtaining a default judgment and order for attorneys' fees in this case:

- Drafting and filing the Complaint and accompanying documents;
- Ensuring proper service on Mr. Hickman;
- Preparing *pro hac vice* applications;
- Drafting and filing entry of default;
- Drafting and filing motion for default and accompanying declarations and exhibits;
- Drafting and filing reply to Mr. Hickman's letter;
- Drafting and filing proposed judgment and order for permanent injunction against Mr. Hickman; and
- Drafting and filing this motion for fees and accompanying declarations and exhibits.

Ball Decl. Ex. 5.

In light of the work performed, and the quality of results, the foregoing numbers fit comfortably within a reasonable range for the number of hours that needed to be worked in a case of this complexity. To determine the reasonable hours worked in winning this case, attorneys from Fenwick started by considering the total hours worked by their respective teams, and from these total hours, took a conservative approach, striking or reducing time entries where the work could be viewed as duplicative or where the work took longer than might have reasonably been expected. *Id*. ¶¶ 19-21. Yuga Labs' attorneys judiciously described each of their activities in detail, and in order to avoid any doubt about the veracity of its time entries, Yuga Labs is not seeking recovery for any entries where multiple tasks were combined into a single entry. *Id*. ¶¶ 19, 26. Yuga Labs is also not seeking fees for the entirety of the hours billed by the attorney with the highest billing rate, Eric Ball. *See id.* ¶ 26. Likewise, Fenwick did not

include hours billed by timekeepers who spent less than five hours working on this case. *Id.* In total, Fenwick reduced its hours by approximately 22% of those recorded by its professionals to remove any doubt about the reasonableness of this fee request. *Id.* ¶¶ 26, 29. And the number of hours Yuga Labs' attorneys expended is reasonable when viewed in light of the millions of dollars in damages Mr. Hickman and the rest of the RR/BAYC Team have caused to Yuga Labs' brand, warranting an injunction, and the $193,863.70 monetary damages award the company received in the Court's Order on Default Judgment.

### B. The circumstances of the case do not warrant a reduction in the fee award.

The Court may also consider the *Kerr* factors when using its discretion to adjust the lodestar amount up or down. As required by Local Rule 54-16(b), Yuga Labs provides a brief summary of how these twelve factors apply to this case and warrant the fee award.

***The results obtained and the amount involved:*** Counsel's success is of particular import in the Court's calculation of attorneys' fees and costs. *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996), *amended*, 108 F.3d 981 (9th Cir. 1997). Here, Yuga Labs' counsel obtained a favorable ruling on its motion for default judgment, with the Court granting Yuga Labs' request for monetary damages, attorneys' fees and costs, and injunctive relief. *See* Dkt. No. 26. at 7-8. The amount of fees and costs requested is a fraction of the total recovery of $193,863.70. But "results may not be measured solely in terms of damages" and "the district court should consider not only the monetary results but also the significant nonmonetary results [the plaintiff] achieved for himself and other members of society." *McCown v. City of Fontana*, 565 F.3d 1097, 1105 (9th Cir. 2009) (citing *Morales*, 96 F.3d at 365). The injunction against Mr. Hickman is invaluable to Yuga Labs in that it allows it to protect the integrity and goodwill built up in the BAYC Marks and BAYC brand. Moreover, the injunction serves the public interest by preventing further confusion as a result of Mr. Hickman's use of BAYC Marks to market scam NFTs. "Such a nonmonetary victory may constitute 'excellent results' for the purpose of calculating attorney's fees." *Id.* This factor favors a full award of fees.

***The time and labor required:*** The number of hours committed to this dispute was no more than what was required to achieve the favorable outcome of a default judgment, and the fee

request seeks an award of less than what was spent by Yuga Labs to achieve this result. The work involved was neither simple nor routine. For example, the lawsuit against Mr. Hickman presents novel issues of trademark law as applied to new technology – NFTs. Furthermore, drafting the motion for default involved a significant amount of research into case law and investigation of supporting facts to achieve the unambiguous success of an injunction and damages award. In addition, Mr. Hickman's failure to appear in this case when he was indisputably on notice of it (as shown by his letter opposition filed with the Court (*see* Dkt. No. 24)) increased the level of effort required by Yuga Labs' counsel to achieve the favorable result. Therefore, the number of hours worked by Yuga Labs' counsel for which it is seeking a fee award is conservatively stated and reasonable. This factor favors a full award of fees.

***The novelty and difficulty of the questions involved:*** This is a case involving trademark infringement, which is itself a complex, fact-intensive area of the law. Yet it also involves NFTs, a novel technology that further adds to the complexity and novelty of issues in this case. The authority on trademark cases involving NFTs is very limited, as few courts have had to grapple with such burgeoning areas of technology, and this case involved matters of first impression in this judicial district. This factor favors a full award of fees.

***The skill requisite to perform the legal service properly:*** As explained above, this case was diligently and efficiently litigated by highly qualified attorneys whose specialized skill and experience was necessary to properly litigate these complex issues. *Supra* at IV.A.1. This factor favors a full award of fees.

***The preclusion of other employment by the attorney due to acceptance of the case:*** Although Yuga Labs' counsel were not precluded from other employment by their acceptance of this case, their availability to work on additional cases was limited by the time commitment required to prosecute this case. This factor is neutral.

***The customary fee:*** As shown above, Fennemore's rates are well within the customary fee sought in this district. *Supra* at IV.A.1. And while Fenwick's rates are higher than some attorneys in Nevada, they are customary in jurisdictions like San Francisco and necessary to

prosecute this case due to the attorneys' unique skills and experience, as well as the national scope of this litigation. *Id.* This factor favors a full award of fees.

***Whether the fee is fixed or contingent:*** The fees in this matter are calculated on an hourly basis. The fact that Yuga Labs has paid for work on an hourly basis at the stated rates supports the presumptive reasonableness of the lodestar calculation. This factor favors a full award of fees.

***The time limitations imposed by the client or the circumstances:*** Mr. Hickman first appeared in this case by opposing Yuga Labs' Motion for Default. Having considered Mr. Hickman's opposition, the Court nevertheless entered default judgment for Yuga Labs. This factor favors a full award of fees.

***The experience, reputation, and ability of the attorney(s):*** Fenwick is recognized as a leading law firm that specializes in high stakes intellectual property litigation for innovative, cutting-edge technology companies. *See* Ball Decl. ¶ 4. Its attorneys—including those litigating this case—collectively have decades of experience handling high-profile intellectual property litigation and command fees that reflect their skill and market demand. *See id.* ¶¶ 6-9. Yuga Labs staffed this matter appropriately. Fenwick assigned one partner reviewing work product, one counsel, one senior associate, and one junior associate researching and drafting to reduce the attorneys' fees. *Id.* ¶ 17.

Likewise, Fennemore is recognized as a leading law firm in the state of Nevada and provided invaluable analysis and assistance as local counsel in this case. *Id.* ¶ 16. It also staffed the case leanly with only one partner, two associates, and one paralegal. *Id.* ¶ 18. This factor favors a full award of fees.

***The undesirability of the case, if any:*** Yuga Labs is not aware of anything making this case undesirable. This factor is neutral.

***The nature and length of the professional relationship with the client:*** Courts in trademark cases have recognized that counsel's familiarity with a client's business and litigation needs may be a factor in determining the reasonableness of attorneys' fees in that it may be "more expeditious as well as to their ultimate advantage to utilize the services of counsel familiar

with their corporation and their trademark needs rather than local attorneys." *See Playboy Enters., Inc. v. P.K. Sorren Export Co., Inc.*, S.D. Fla. Case No. 81–1264–Civ–CA, 1983 WL 178, *2 (S.D. Fla. Jan. 5, 1983).

Here, Fenwick has advised Yuga Labs on a variety of matters since the company was founded in 2021. In particular, Fenwick has represented Yuga Labs in multiple trademark disputes that are directly related to this action, including those brought against other members of the RR/BAYC Team in the Central District of California (*Yuga Labs, Inc. v. Ripps et al.*, Case No. 2:22-cv-04355-JFW-JEM (C.D. Cal. June 24, 2022)) and the Northern District of New York (*Yuga Labs, Inc. v. Lehman*, Case No. 1:23-cv-00085-MAD-TWD (N.D.N.Y Feb. 6, 2023)). Ball Decl. ¶ 15. Fenwick is also assisting Yuga Labs with the prosecution of its trademark portfolio and has been doing so for more than one year. *Id*. ¶ 14. Moreover, Yuga Labs' Chief Legal Officer is a former Fenwick attorney who has a prior working relationship with a number of the lawyers working on this matter. *Id*. Fenwick's deep knowledge of the facts and law of this case, as well as its unique understanding of Yuga Labs' business needs, therefore made Fenwick the practical and effective choice for representation. This factor favors a full award of fees.

*Awards in similar cases:* The amount requested for Fennemore is reasonable and consistent with fee awards in similar cases in Nevada. *See supra* at IV.A.1. The amount requested for Fenwick is reasonable and consistent with fee awards for counsel in other jurisdictions and counsel in Nevada where local counsel was unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to properly handle the case. *See id*. This factor favors a full award of fees.

## V.   CONCLUSION

Yuga Labs' attorneys' fees are reasonable based on the skill and experience of counsel at Fenwick and Fennemore and due to the demands and novel issues in this case. Accordingly, Yuga Labs should be awarded $47,178.44 in fees as well as costs in the amount set forth in the concurrently filed Bill of Costs.

Dated: September 11, 2023

FENNEMORE CRAIG P.C.

By: */s/ John D. Tennert III*
JOHN D. TENNERT III (NSB 11728)

and

FENWICK & WEST LLP
ERIC BALL (CSB 241327)
MOLLY R. MELCHER (CSB 272950)
KIMBERLY CULP (CSB 238839)
ANTHONY M. FARES (CSB 318065)

*Attorneys for Plaintiff Yuga Labs, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2023, the foregoing **PLAINTIFF YUGA LABS, INC.'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS** was electronically served upon the parties via the Court's e-CM/ECF system, addressed as follows:

> Caleb L . Green
> Dickinson Wright PLLC
> 3883 Howard Hughes Parkway, Suite 800
> Las Vegas, NV  89169
> Email:  cgreen@dickinson-wright.com
>
> *Counsel for Defendant*
> *Ryan Hickman*

>                              */s/ Susan Whitehouse*
>                              An Employee of Fennemore Craig, P.C.