JOHN D. TENNERT III (NSB No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG P.C.
9275 W. Russell Road, Suite 240
Las Vegas, NV  89148
Telephone: 702.692.8000
Facsimile: 702.692.8099

ERIC BALL (CSB No. 241327) (*pro hac vice*)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839) (*pro hac vice*)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950) (*pro hac vice*)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065) (*pro hac vice*)
afares@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:23-cv-00111-JCM-NJK |
| Plaintiff, | **PLAINTIFF YUGA LABS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE OR SET ASIDE DEFAULT JUDGMENT** |
| v. | |
| RYAN HICKMAN, | |
| Defendant. | |

## I.      INTRODUCTION

Mr. Hickman's Motion to Set Aside or Vacate the Default Judgment ("Motion") comes before this Court more than six months after Yuga Labs served Mr. Hickman with the Summons and Complaint.  Mr. Hickman has known about this lawsuit since at least January 29, 2023; just days after Yuga Labs filed its Complaint against him and before it even served him, Mr. Hickman was tweeting about the fact that he had been sued.  Yet, Mr. Hickman refused to answer the Complaint notwithstanding having indisputable knowledge of the lawsuit and the consequences of his failure to act.  Mr. Hickman knowingly risked the default judgment entered against him.

Mr. Hickman's conscious disregard for the consequences of his inaction in this Court is undoubtedly calculated given that he voluntarily chose to testify in defense of his business partners at trial in California.  Mr. Hickman's sudden interest in participating in this action is not a legitimate basis for vacating the default judgment.

This Court has personal jurisdiction over Mr. Hickman because service of process was properly effectuated on him pursuant to the Federal Rules, and Mr. Hickman does not meet his burden to prove otherwise.  Mr. Hickman's blatant lack of respect for the authority of this Court and its proceedings is the sole reason default judgment was entered against him, and the judgment should thus not be vacated.  Mr. Hickman has also failed to raise a single meritorious defense against Yuga Labs' claims, and Yuga Labs and the public would be prejudiced if the default judgment were to be set aside.  Therefore, Yuga Labs respectfully requests that the Court stand by its order granting default judgment and deny Mr. Hickman's Motion.

## II.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case stems from Yuga Labs' tireless efforts to stop four scammers from ripping off Yuga Labs' trademarks and continuing to cause irreparable harm to the company and its cornerstone brand.  Two courts have already held three of the four individuals liable for the scam.  *See Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMX), 2023 WL 3316748, at *10-11 (C.D. Cal. Apr. 21, 2023) (the "*Ripps* Matter"); *see also*, Consent Judgment against Thomas Lehman (Dkt. No. 12), *Yuga Labs, Inc. v. Lehman*, No. 1:23-cv-00085-MAD-TWD (N.D.N.Y

FENWICK & WEST LLP
ATTORNEYS AT LAW

Feb. 6, 2023).  Mr. Hickman has made every effort to shirk his legal obligations and hide from the consequences of his own actions to avoid the same fate as his business partners. Mr. Hickman's present Motion is his latest attempt to delay justice and prevent Yuga Labs from regaining control of its brand.

Yuga Labs is the creator behind one of the world's most well-known and successful NFT collections, known as the Bored Ape Yacht Club ("BAYC"), and uses its BAYC Marks[1] in connection with its products and services nationwide and internationally through multiple platforms, NFT marketplaces, and social media.[2]  In response to BAYC's popularity, Mr. Hickman and his business partners (Ryder Ripps, Jeremy Cahen, and Thomas Lehman) launched a business venture to scam consumers into purchasing their "RR/BAYC" NFTs, which use the very same BAYC Marks and underlying images as BAYC NFTs.  *See* Dkt. No. 26 at 2. As part of this profit-making scheme, Mr. Hickman created and commercialized websites and a smart contract to sell the intentionally misleading RR/BAYC NFTs to the average consumer, oversaw and promoted their sales (knowing that they bore an infringing label of "Bored Ape Yacht Club (BAYC)"), and developed a marketplace to sell the infringing NFTs—the "Ape Market." *Id*.  Mr. Hickman's use of the BAYC Marks has caused and continues to cause actual confusion in the marketplace, which has resulted in damage and irreparable injury to Yuga Labs' hard-earned reputation.

To put an end to Mr. Hickman's blatant and willful trademark infringement, Yuga Labs commenced this action against him on January 20, 2023.  *See* Dkt. No. 1 (Complaint for False Designation of Origin and Cybersquatting).  Mr. Hickman was served with process via substituted service on February 9, 2023.  *See* Dkt. No. 18.  The process server, Deyber Jimenez, has twice confirmed under oath that he served Mr. Hickman through substituted service.  *See* Dkt. No. 18; Affidavit of Deyber Jimenez ("Jimenez Aff.").  Mr. Jimenez properly informed a female co-occupant of the home, who was of suitable age and discretion to accept the papers,

FENWICK & WEST LLP
ATTORNEYS AT LAW

---

[1] Yuga Labs' BORED APE YACHT CLUB, BAYC, BORED APE, APE, BA YC Logo, BA YC BORED APE YACHT CLUB Logo, and Ape Skull Logo trademarks.

[2] As Judge Walter held, these marks are valid and protectable. *Yuga Labs, Inc. v. Ripps*, 2023 WL 3316748, at *4-7.

about the nature of the legal documents and that he would leave them for her on the ledge by the front door; he then set the documents down on that ledge in front of her.  Jimenez Aff. ¶ 6. Thereafter, she began to return to the house, volunteered that she was not signing for anything, and walked past the documents into the house.  *Id.* ¶¶ 6, 9.

Despite being validly served, Mr. Hickman failed to file a responsive pleading within the time prescribed by Federal Rule of Civil Procedure 12(a) or any time thereafter.  In fact, instead of responding to the Complaint or retaining counsel, Mr. Hickman continued to tweet about Yuga Labs and publicly admitted to being sued, including mere days after Yuga Labs filed this lawsuit.  *See*, *e.g.*, Ball Decl. Exs. 1-2, ¶ 4.  He also continued to actively fight Yuga Labs in other cases.  For example, on February 1, 2023, Mr. Hickman emailed Yuga Labs regarding his failure to produce relevant documents responsive to a subpoena served on him in the *Ripps* Matter ("Subpoena Matter").  Ball Decl. ¶ 9.  Notably, he sent this email from ***the same email address*** that Yuga Labs' counsel used to email serve Mr. Hickman with copies of e-filings in this case.  *Id.*  Mr. Hickman continued to communicate from this email address with Yuga Labs' counsel throughout March regarding his failure to produce all responsive documents in the Subpoena Matter.  *Id.*  Mr. Hickman also appeared at trial with the defendants in the *Ripps* Matter and admitted during his cross-examination that he was aware of this lawsuit against him. *Id.* ¶ 13, Ex. 8 at 206:5-8.

Seeing no indication from Mr. Hickman that he intended to participate or defend this lawsuit, Yuga Labs moved for an entry of default against Mr. Hickman (Dkt. No. 19), which the clerk entered on March 20, 2023 (Dkt. No. 21).  Mr. Hickman was served with notice of the clerk's entry of default on March 27, 2023 by email and United States mail (*see* Dkt. No. 22) and was also directly notified by Yuga Labs' counsel via email that he was in default and that Yuga Labs intended to seek a default judgment against him.  Ball Decl. ¶¶ 5, 10.  Thereafter, on March 31, 2023, Yuga Labs filed its Motion for Default Judgment (Dkt. No. 23).  This, too, was served on Mr. Hickman by email and United States mail.  Dkt. No. 23; Ball Decl. ¶ 5.

On April 12, 2023, more than two full months after admittedly receiving notice of this lawsuit and after the clerk of this Court had already entered Mr. Hickman's default,

FENWICK & WEST LLP
ATTORNEYS AT LAW

Mr. Hickman sent a letter to the Court requesting its "support and immediate relief" (Dkt. No. 24 at 3), which the Court "liberally" construed to Mr. Hickman's benefit as an opposition to Yuga Labs' Motion for Default Judgment.  Dkt. No. 26 at 4.[3]  Yuga Labs filed a reply to Mr. Hickman's opposition (Dkt. No. 25).  After the motion for default judgment was fully briefed, and having considered Mr. Hickman's arguments about improper service of process, the Court granted Yuga Labs' Motion for Default Judgment on August 16, 2023, awarding Yuga Labs $193,863.70 in monetary damages, injunctive relief, and its reasonable attorneys' fees and costs.  *See* Dkt. No. 26 at 7-8; *see also*, Dkt. No. 30 at 2.

Two weeks after the Court entered its Order Granting Yuga Labs' Motion for Default Judgment, and after the Court granted Yuga Labs' proposed judgment that was submitted in accordance with the Court's Order (*see* Dkt. Nos. 27, 30), Mr. Hickman filed the present Motion. Mr. Hickman's sudden interest in protecting the profits of his scam and desire to continue to harm Yuga Labs and the public is far too late and should be denied.

## III.   LEGAL STANDARD

"[A] defendant moving to vacate a default judgment based on improper service of process, where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur."  *S.E.C. v. Internet Sols. For Bus. Inc.,* 509 F.3d 1161, 1165 (9th Cir. 2007).  "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence."  *Id.* at 1163.

"[A] district court may deny a motion to vacate default judgment if: (1) the plaintiff would be prejudiced if the judgment is set aside, (2) defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default."  *Am. Ass'n of Naturopathic Physicians v.*

---

[3] On the same date, Mr. Hickman filed a nearly identical letter in the Subpoena Matter.  *See* Letter from Ryan Hickman (Dkt. No. 34), *Yuga Labs, Inc. v. Ripps, et al.*, 2:23-cv-00010-APG-NJK (D. Nev. Apr. 12, 2023).  This was Mr. Hickman's first appearance in the Subpoena Matter, despite being properly served on January 11, 2023.  *See* Affidavit of Service (Dkt. No. 14), *Yuga Labs, Inc. v. Ripps, et al.*, 2:23-cv-00010-APG-NJK (D. Nev. Jan. 24, 2023).  Even though the case initiating documents in the Subpoena Matter were properly delivered to his then 20-year-old daughter at Mr. Hickman's residence, Mr. Hickman's letter nonetheless disputed service there too.  *Id.*; Letter from Ryan Hickman (Dkt. No. 34) at 1, *Yuga Labs, Inc. v. Ripps, et al.*, 2:23-cv-00010-APG-NJK (D. Nev. Apr. 12, 2023).

Fenwick & West LLP
Attorneys at Law

*Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000) (citation omitted).  "'[T]his tripartite test is disjunctive,' meaning that the district court would be free to deny the motion if any of the three factors was true." *Id.* (citation omitted).  The defendant moving to have a default judgment set aside under Rule 60(b) has the burden of proving that he is entitled to relief.  *See Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).  The Court should deny Mr. Hickman's motion because he fails to prove that each of these factors is false.

**IV.    ARGUMENT**

    **A.    Yuga Labs Properly Served Mr. Hickman on February 9, 2023.**

        **1.    Mr. Hickman's claimed evidence fails to meet his burden of proof.**

Mr. Hickman bears the burden of proving that service was improper because he had actual notice of this lawsuit but failed to bring this motion until after the Court granted default judgment.  *See Internet Sols. For Bus. Inc.*, 509 F.3d 1161 at 1165; Mot. at 11; Ball Decl. Exs. 1-2, ¶ 4.  Mr. Hickman's burden is even more substantial because Yuga Labs has made a *prima facie* showing of valid service by filing with this Court the process server's Declaration of Service (Dkt. No. 18) and providing an additional affidavit from the process server that details the manner of service.  *See* Jimenez Aff.; *see also*, *Internet Sols. For Bus. Inc.*, 509 F.3d at 1166.

Mr. Hickman has failed to satisfy his burden to rebut the presumption of proper service and prove that service was not effective.  Mr. Hickman's latest argument is that his youngest daughter was the person who interacted with Mr. Jimenez on February 9, 2023, and that she was nearly thirteen years old (as opposed to nearly sixteen years old) at the time of service.[4] *Compare* Dkt. No. 24 *with* Dkt. No. 31.  But, as discussed below, Mr. Hickman offers ***no evidence*** that, even if true, his daughter was incapable of accepting papers at their home.  Mr. Hickman also already unsuccessfully argued before this Court that the process server allegedly left the

---

[4] Mr. Hickman does not aver that his older daughter or any other female occupant approximately aged 16 was not at the house in Henderson, Nevada on February 9, 2023.  *See generally* Dkt. No. 31-1 ("R. Hickman Decl.").  Indeed, in the Subpoena Matter against Mr. Hickman, his older daughter, London Hickman, accepted service of papers on Mr. Hickman's behalf.  Ball Decl. ¶ 8 Ex. 5.  It is possible that Melody Hickman was not the female that Mr. Jimenez interacted with on February 9, 2023.

FENWICK & WEST LLP
ATTORNEYS AT LAW

papers to blow away in the wind.[5]  Dkt. No. 24 at 1.  In granting Yuga Labs' motion, this Court gave significant weight to Mr. Jimenez's declaration of service and held that Mr. Hickman's evidence was "not enough to overcome the sworn affidavit of the process server."  Dkt. No. 26 at 5.  Mr. Hickman's evidence ***still*** is not enough to overcome the process server's sworn affidavit.

First, Mr. Hickman's claimed evidence blatantly contradicts his April 12, 2023, representations to the Court.  In April, Mr. Hickman wrote, "in the video footage transcription the process server states 'I can't give this to you, so I will put it right here on the ledge.'"  Dkt. No. 24 at 1-2.  The video that Fenwick & West was served with in connection with Mr. Hickman's Motion has neither video transcription nor audio.  Dkt. No. 32; Ball Decl. ¶ 23.  Moreover, Mr. Hickman's admission on April 12, 2023, contradicts his current sworn testimony that the process server told his daughter he "could not serve her", left the house, and then "later returned" to deposit the documents.  R. Hickman Decl. ¶¶ 11-12[6]; *see also* Dkt. No. 31-3 ("M. Hickman Decl.") ¶ 7.

Second, Mr. Hickman's self-serving declarations are also directly contradicted by Mr. Jimenez's sworn statements.  *Compare* Jimenez Affidavit *with* R. Hickman Decl. *and* M. Hickman Decl.  Given this conflict and that Mr. Hickman bears the burden of proof, Mr. Hickman's disputed evidence does not carry his burden.  *See Motorola Sols., Inc. v. Pick*, No. 2:15–cv–00236–MMD–GWH, 2015 WL 5895902, at *2 (D. Nev. Oct. 8, 2015) ("A self-

---

[5] Ms. Hickman's declaration does not dispute Mr. Jimenez's sworn testimony that he told the female he would leave the papers on the ledge (Jimenez Aff. ¶ 6).  Mr. Hickman's April 12, 2023 letter also confirms that this exchange occurred (Dkt. No. 24 at 1-2).  In other words, Mr. Jimenez's sworn testimony that he told the female occupant he would leave the papers on the ledge and did so in her presence is unrebutted by the new evidence presented by Ms. Hickman's declaration.  Moreover, Mr. Hickman offers no evidence that no resident of his household retrieved those papers.  That Mr. Hickman was aware of not only the existence of the case, but also where it was filed and what the case number was is further evidenced by his April 12, 2023 letter to the court, wherein he typed the accurate case number for this case. Dkt. No. 24.  Any insinuation that Mr. Hickman did not receive the papers delivered to his home is unsupported by the evidence.

[6] Mr. Hickman's sworn testimony about what happened on February 9 is inadmissible hearsay and lacking in personal knowledge since Mr. Hickman was admittedly not present for the facts described and conversation that occurred.  R. Hickman Decl. ¶ 9 (averring that he was traveling and therefore not present for the events described in paragraphs 9 – 12).  By discussing these paragraphs in its opposition, Yuga Labs does not waive its objections to the admissibility of this testimony.

FENWICK & WEST LLP
ATTORNEYS AT LAW

serving declaration is generally not sufficient to overcome prima facie evidence of valid service."); *Pathak v. Exotic Meat market, Inc.*, No. 2:16–cv–00368–JAD–VCF, 2016 WL 5213915, at *3 (D. Nev. Sept. 20, 2016) (holding that conclusory declarations merely denying receipt of service are insufficient to overcome the presumption of service); *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 371 (9th Cir. 1996) ("In general, if the evidence is evenly balanced, such that a decision on the point cannot be made one way or the other, then the party with the burden of persuasion loses.").

Third, Mr. Hickman's own evidence establishes certain agreed-upon facts that reveal Mr. Hickman's purported video evidence to be suspiciously incomplete.  There is no dispute that on February 9, 2023, Mr. Jimenez interacted with a female residing in Mr. Hickman's home while that person was taking out the trash at the end of Mr. Hickman's driveway.  Jimenez Aff. ¶ 6; R. Hickman Decl. ¶ 9; M. Hickman Decl. ¶ 5; *see also* Ball Decl. ¶ 24, Ex. 16.  There is also no dispute that there was some verbal exchange between these two people.  Jimenez Aff. ¶ 6; R. Hickman Decl. ¶ 11; *see also*, M. Hickman Decl. ¶ 5.  These established facts demonstrate the gaping holes in Mr. Hickman's silent video clip.  Specifically, there is no video evidence showing the female leaving the house to take out the trash and returning to the house after doing so, even though there is no dispute that these events occurred.  Dkt. No. 32.  When Yuga Labs' counsel asked Mr. Hickman's counsel for this additional evidence, they were told, "our client confirmed the version we previously sent you is the only version he has in his possession."  Ball Decl. ¶ 23; Emails Between Counsel (Dkt. No. 31-4) at 3.  Mr. Jimenez has sworn that he believes the video evidence (if it still existed) would show the female leaving the home, followed by him depositing the documents on the ledge, and then the female returning to the home. Jimenez Aff. ¶ 9.  In addition, Mr. Hickman's video has been clipped such that the time period during which Mr. Jimenez walked up or walked down Mr. Hickman's driveway is not discernable.  Dkt. No. 32.  Furthermore, Mr. Hickman previously represented that there was audio confirming that Mr. Jimenez was speaking to someone when he placed the documents on the ledge.  Dkt. No. 24 at 1-2.  In light of these numerous evidentiary gaps, there is no basis to conclude that Mr. Hickman's story is accurate.  To the contrary, the video most likely reflects the

period of time after the female left the house and was approached by Mr. Jimenez and before she returned to the house.  *See also* Ball Decl. ¶ 24, Ex. 16; Jimenez Aff. ¶ 9.  It is entirely possible, too, that had Mr. Hickman not selectively edited (or destroyed) the fuller video, we would see evidence of a member of his household coming outside to retrieve the papers.

In summary, Mr. Hickman's bare allegations of "fraudulent" and "gross misrepresentations" and an undated, silent, nine-second-long video clip that omits key portions of footage showing the interaction between Mr. Jimenez and the female who accepted service, do not amount to the strong and convincing proof required to overcome Yuga Labs' *prima facie* showing of valid service.  Likewise, *Ms.* Hickman (the only other person allegedly present for this exchange) does not dispute that Mr. Jimenez left the documents on the ledge by the front door after telling her he would leave them there, that she saw the papers and walked past them without taking them into the house, or that she volunteered to him that she would not sign for anything.  *Compare* Jimenez Aff. *with* M. Hickman Decl. (Dkt. No. 31-3).  Mr. Jimenez's testimony on these facts is unrebutted by any evidence offered by Mr. Hickman.  Therefore, because Mr. Hickman has failed to meet his burden of proving that service was improper, the Court should deny his Motion on this ground.

### 2.     Mr. Hickman's daughter is a person of suitable age and discretion to accept service on Mr. Hickman's behalf under the Federal Rules.

Assuming it was Melody Hickman with whom Mr. Jimenez interacted with on February 9, 2023, service was effectuated.  Under Federal Rule of Civil Procedure 4, an individual may be served by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode ***with someone of suitable age and discretion who resides there***."  Fed. R. Civ. P. 4(e)(2)(B) (emphasis added).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Com. Workers Union, Locals 197, 373, 428, 588, 775, 839, 870, 1119, 1179, and 1532 v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984) (cleaned up).  Here, there is no dispute that Mr. Hickman had repeated notice of the Complaint.

Rule 4 does not require service on an adult, but has a lower bar, requiring service on someone of suitable age and discretion. *See De George v. Mandata Poultry Co.*, 196 F. Supp. 192, 194 (E.D. Pa. 1961). "The relevant inquiry when determining whether an individual is a person of 'suitable age and discretion' is whether the individual is 'reasonably likely to convey notice to the defendant.'" *United States v. Kumar*, No. 19 Civ. 4501 (ENV) (VMS), 2021 WL 7908013, at *2 (E.D.N.Y. March 29, 2021) (quoting *City of New York v. Chemical Bank,* 470 N.Y.S.2d 280, 285 (N.Y. Sup. Ct. 1983) ("The person to whom delivery is made must objectively be of sufficient maturity, understanding and responsibility under the circumstances so as to be reasonably likely to convey the summons to the defendant.")). "[I]t is clear that the amount of discretion necessary to satisfy the rule is rather low." *Flowers v. Klatick*, No. 93 C 6606, 2004 WL 2005814, at *2 (N.D. Ill. Sept. 1, 2004).

Here, it is undisputed that Mr. Hickman's "youngest" daughter resides at Mr. Hickman's home in Henderson, Nevada. *See* R. Hickman Decl. ¶ 6. The evidence also establishes that Ms. Hickman was of a suitable age to bring the papers into Mr. Hickman's home. First, she was taking the trash out on her own, unsupervised, in the evening. *See* Jimenez Aff. ¶ 6; *see also* R. Hickman Decl. ¶ 9; M. Hickman Decl. ¶ 5. Second, she understood that the papers presented to her held a certain level of import, as evidenced by her volunteering to Mr. Jimenez that she "was not signing for anything." Jimenez Aff. ¶ 6. Ms. Hickman's unsolicited statement also implies some understanding of what the papers were, which is unsurprising since her older sister previously accepted service of legal papers at the same location. Ball Decl. ¶ 8, Ex. 5. Finally, Mr. Hickman offers no evidence that his youngest daughter was *not* of suitable age and discretion. Mr. Hickman does not declare that his daughter did not tell anyone in the household about her interaction with Mr. Jimenez or retrieve the papers. No adult member of Mr. Hickman's household testifies that Ms. Hickman left them uninformed about her conversation with Mr. Jimenez. Similarly, no member of Mr. Hickman's household declares that they did not retrieve the papers from the front door porch ledge. Indeed, Mr. Hickman himself does not declare that no member of his household retrieved the papers.

The only fact that Mr. Hickman points to in support of his contention that his daughter was not of suitable age and discretion is that she was one-week away from turning thirteen-years-old at the time of service, rather than fifteen-years-old as she told Mr. Jimenez. *See* Jimenez Aff. ¶ 6.  Even so, however, courts in other jurisdictions have held that twelve and thirteen-year-old persons are of suitable age and discretion for purposes of accepting service on behalf of a defendant. *See*, *e.g.*, *Trammel v. Nat'l Bank of Georgia*, 159 Ga. App. 850 (Ga. Ct. App. 1981) (holding that service upon the defendant's twelve-year-old daughter was proper and valid service upon the defendant); *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1244 (S.D.N.Y. 1982) (rejecting defendant's argument that his 12-year-old son was not a person of "suitable age and discretion" because defendant failed to show that son did not possess the intelligence to deliver the papers to his father); *Perkins v. Johnson*, No. 06–cv–01503–REB–PAC, 2008 WL 275768, at *3 (D. Colo. Jan. 29, 2008) ("[T]he Court is persuaded that Yankovich's act of leaving the papers on the threshold of Fry's home in the sight of her thirteen-year-old daughter satisfies the requirements for service pursuant to Fed. R. Civ. P. 4(e)(2)(B)."); *United Servs. Auto Ass'n v. Barger*, 910 F.2d 321, 324 (6th Cir. 1990) ("Barger testified that his son was responsible and gave him messages; thus, his son would seem to be a person of suitable age and discretion under this provision.").

Without more, Mr. Hickman cannot establish that service of process on his nearly thirteen-year-old daughter at their residence is insufficient. *See Trammel*, 159 Ga. App. at 852-53 ("The only evidence that the appellant submits in support of his contention that the daughter of appellants was not of suitable age and discretion is that she is twelve years old.  We refuse to hold as a matter of law that a twelve year old is not 'a person of suitable age and discretion.'").

### 3.    The process server properly placed the Complaint and Summons in the presence of a co-occupant of suitable age and discretion, as allowed by the Federal Rules.

"Sufficient service may be found where there is a good faith effort to comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service." *Travelers Cas.*

*and Sur. Co. of America v. Brenneke*, 551 F.3d 1132, 1136 (9th Cir. 2009).  A process server need not physically hand the papers to the defendant to effectuate proper service.  *Id.*  "'[W]here a defendant attempts to avoid service *e.g.* by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant.'"  *Id.* (quoting *Doe 1 v. Liu Qi*, 349 F. Supp. 2d 1258, 1275 n. 5 (N.D. Cal. 2004)).  These same principles apply where the papers are left with a co-occupant of suitable age and discretion.  *See*, *e.g.*, *Siemens Med. Sols. USA, Inc., v. Sequoia Techs.*, No. CV-05-0529-PHX-FJM (LOA), 2006 WL 8441197, at *6 (D. Ariz. Feb. 6, 2006); *see also*, *United Food & Com. Workers Union*, 736 F.2d at 1382.

Here, service was sufficient because the process server diligently and in good faith served Mr. Hickman by placing the Complaint and Summons in close proximity to a co-occupant of suitable age and discretion, within that person's clear view, and with that person's knowledge. Mr. Jimenez approached the female occupant in front of Mr. Hickman's residence while she was taking out the trash, showed her the documents in his hand, explained to her that they were legal documents, and notified her that he was leaving the documents by the front door where she could collect them.  Jimenez Aff. ¶ 6; *see also*, Ball Decl. Ex. 16.  After Mr. Jimenez placed the documents on the ledge next to the front door, the female occupant made her way back to the front door, passing by the documents, and stating that she would not sign for anything.  *Id.* ¶¶ 6, 9; *see also*, Ball Decl. Ex. 16.  Given these circumstances, service was proper.  *See Novak v. World Bank*, 703 F.2d 1305, 1310 n. 14 (D.C. Cir. 1983) ("When a person refuses to accept service, service may be effected by leaving the papers at a location, such as on a table or on the floor, near that person."); *Fed. Fin. Co. v. Longiotti*, 164 F.R.D. 419, 421 (E.D.N.C. 1996) (finding that service was effected where a private investigator attempted to give the defendant's wife an envelope containing legal documents, she knew he was attempting to serve documents, and the private investigator left the envelope on the doorstep).

Mr. Hickman's assertions that Mr. Jimenez departed Mr. Hickman's residence after communicating with his daughter, returned "unannounced," and "abandoned the documents on the window-sill on [his] front porch" (Mot. at 9) are factually unsupported (Mr. Hickman was

1  not present at the time of service, and no person who was testifies to these facts) and are also

2  contradicted by Mr. Jimenez's declaration and affidavit of service.  The video clip that

3  Mr. Hickman offers in support to purportedly show the process server's defective service does

4  not corroborate his arguments; the video fails to depict the complete interaction between

5  Mr. Jimenez and the female and conveniently excludes key portions of footage.  Jimenez Aff. ¶

6  9.  What the full camera footage would likely show is the female exiting the front door to take

7  out the trash, Mr. Jimenez depositing the documents on the ledge, and Ms. Hickman passing by

8  the documents to re-enter the home.  *Id.*  Mr. Hickman is the sole reason the Court does not have

9  a full video and has instead received only a snippet of what was indisputably a longer interaction.

10  Moreover, as discussed above, Mr. Hickman's conclusory and speculative statements about an

11  interaction that he was not even involved in fail to overcome the presumption of valid service

12  established by the process server's sworn statements.  Therefore, service was proper, and the

13  Court's default judgment against Mr. Hickman should stand.

14  **B.     The Default Judgment Should Not Be Set Aside Under The *Falk* Factors.**

15  Under *Falk*, a district court has the discretion to deny a Rule 60(b)(1) motion if (1) the

16  defendant's culpable conduct led to the default, (2) the defendant has no meritorious defense, ***or***

17  (3) the plaintiff would be prejudiced if the judgment is set aside.  *See Falk v. Allen*, 739 F.2d

18  461, 463 (9th Cir. 1984).  If a default judgment is entered as the result of a defendant's culpable

19  conduct, the Court need not consider whether a meritorious defense was shown, or whether the

20  plaintiff would suffer prejudice if the judgment were set aside.  *See Pena v. Seguros La*

21  *Comercial, S.A.,* 770 F.2d 811, 815 (9th Cir. 1985); *see also*, *Benny v. Pipes*, 799 F.2d 489, 494

22  (9th Cir. 1986).  Here, however, each of these three considerations favor denying Mr. Hickman's

23  Motion.

24  **1.     Mr. Hickman's culpable conduct led to the default.**

25  The Court can and should deny Mr. Hickman's Motion because Mr. Hickman's own

26  culpability prompted the default.  A defendant's conduct is culpable if he has received actual or

27  constructive notice of the filing of the action and failed to answer.  *Pena,* 770 F.2d at

28  815; *Benny,* 799 F.2d at 494.

FENWICK & WEST LLP
ATTORNEYS AT LAW

Here, Mr. Hickman had actual notice of Yuga Labs' Complaint before he was even served with it, and he intentionally declined to answer. As early as January 29, 2023, just over a week after Yuga Labs filed its Complaint, Mr. Hickman publicly announced on Twitter, "if i can be sued, everyone can be sued…." Ball Decl. ¶ 4, Ex. 1. Not long after (and before his deadline to respond lapsed), on February 11, 2023, Mr. Hickman tweeted an excerpt from a CNN article, in which he provided quotes to CNN about this lawsuit, that states, "Ryan Hickman, a software engineer who also worked with Ripps on RR/BAYC, is also being sued separately by Yuga." *Id.* ¶ 4, Ex. 2. Mr. Hickman's own public statements speak for themselves, and he cannot dispute that he has had actual notice of this lawsuit.

In addition to actual notice, Mr. Hickman had constructive notice of this action, given that he was properly served by substituted service under Federal Rule of Civil Procedure 4(e)(2)(B). *See supra* Section IV.A; *see also*, *Pena,* 770 F.2d at 815 ("[S]ervice was effective . . . . Therefore, Seguros had constructive knowledge of this action through service of process to the Arizona Department of Insurance."). Yet, instead of responding to Yuga Labs' Complaint or otherwise participating in this litigation, Mr. Hickman deliberately chose to do nothing until more than three weeks after the Court entered its default order. Mr. Hickman's own culpability prompted the default, and this Court should therefore deny Mr. Hickman's Motion. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (refusing to set aside entry of default because the defendant committed culpable conduct where he "knew that the complaint had been filed" but "intentionally failed to answer.").

Mr. Hickman suggests in his Motion that "his limited legal knowledge" and "lack of familiarity with legal matters" justifies his failure to respond or participate in this litigation. Mot. at 4, 17. Such excuses have no basis in law or fact. First, pro se litigants are not excused from knowing the most basic pleading requirements. *See Am. Ass'n of Naturopathic Physicians*, 227 F.3d at 1108 (citing *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ("[P]ro se litigants are not excused from following court rules[.]").

Second, Mr. Hickman's actions suggest that he does, in fact, understand that lawsuits carry certain legal obligations and that his decision to ignore his obligations in this case were

calculated and deliberate. For example, in his January 29, 2023 Tweet in which he admits to knowledge of this lawsuit, Mr. Hickman also describes the lawsuit as "a legal burden." Ball Decl. Ex. 1. Further, Mr. Hickman admits to opposing the default (*see* Mot. at 17), albeit after months of improper delay. He filed his opposition in two separate Nevada actions, thereby demonstrating his understanding that there were two distinct matters requiring his attention and that he faced legal consequences in each, including in this particular action for failing to respond to Yuga Labs' Complaint. Yet, Mr. Hickman never once attempted to answer Yuga Labs' Complaint or otherwise appear prior to submitting his opposition or even after he received Yuga Labs' reply pointing out his procedural deficiencies. Therefore, rather than proving his purported good faith, Mr. Hickman's efforts demonstrate his complete disinterest in defending this action. Mr. Hickman knowingly and deliberately left it to the Court to decide the judgment against him.

Mr. Hickman's assertion that he made "good faith efforts to retain counsel" (Mot. at 17) similarly fails to disprove his culpability. Mr. Hickman retained counsel only ***after*** default judgment had already been granted, and he provides no reasonable explanation as to why he did not retain counsel earlier. Mr. Hickman has sworn to be a man of means, stating that he owns "many residences in Nevada" (R. Hickman Decl. ¶ 5) and voluntarily testifying at the trial for the *Ripps* Matter in California, where he admitted that he typically expects to make between $750,000 and one million dollars per project he works on. Ball Decl. ¶ 13, Ex. 8 at 220:11-18. Documents produced by Mr. Hickman himself in the *Ripps* Matter show that he was paid nearly $200,000 for less than two months' worth of work on the RR/BAYC NFT scam alone. *See* Ball Decl. ¶ 12, Ex. 6. Mr. Hickman also previously hired a lawyer in the *Ripps* Matter who later fired Mr. Hickman for being non-responsive and refusing to produce responsive documents. *See* Ball Decl. Ex. 4 at ¶¶ 13, 14. Additionally, within the seven-month period when Mr. Hickman failed to file an answer or retain counsel, he was actively working with the lawyers for his partners Mr. Ripps and Mr. Cahen to craft a trial declaration and prepare his trial testimony as a named witness in that case and where his appearance in support of his business partners was entirely voluntary. *See* Ball Decl. ¶ 13. Mr. Hickman is fully aware of how to interact with the

legal system when he wants to.  He chose not to respond to the Complaint in this action.
Mr. Hickman's failure to respond was not the result of a "lack of familiarity with legal matters"
as he suggests; rather, Mr. Hickman's default was the result of his own culpable conduct.  *See*
*Clark v. Andover Sec.*, 44 Fed. Appx. 228, 230 (9th Cir. 2002) ("[W]e have tended to consider
the defaulting party's general familiarity with legal processes or consultation with lawyers at the
time of default as pertinent to the determination whether the party's conduct in failing to respond
to legal process was deliberate, willful, or in bad faith.") (citation omitted); *Meadows v.*
*Dominican Republic,* 817 F.2d 517, 522 (9th Cir. 1987) (finding defendant culpable because it
was "fully informed of the legal consequences of failing to respond . . . [and] sufficiently
sophisticated and experienced in the requirements of American law to protect its interests, ***based***
***on its involvement in other actions in United States courts***.") (emphasis added).

> **2.      Mr. Hickman has failed to assert a single meritorious defense to Yuga Labs' claims.**
>
> > **a.      Mr. Hickman is an authorized licensee in the RR/BAYC business venture.**

15 U.S.C. § 1125(d)(1)(D) provides that a person may be held liable under the ACPA for
using a domain name only if "that person is the domain name registrant ***or that registrant's***
***authorized licensee.***"  15 U.S.C. § 1125(d)(1)(D) (emphasis added).  As this Court held in
granting Yuga Labs' Motion for Default Judgment, Yuga Labs Complaint "states [a] plausible
claim[] for relief for . . . cybersquatting under 15 U.S.C. § 1125(D)."  Dkt. No. 26 at 5.  The
Court further clarified that Yuga Labs' Complaint "is well pleaded as it identifies defendant,
enumerates plaintiff's rights under the Lanham Act, describes the steps defendant took to
infringe upon these rights, and sets forth causes of action for defendants' conduct."  *Id.*  As such,
the Court should not re-consider the sufficiency of Yuga Labs' Complaint and should reject
Mr. Hickman's contentions to the contrary.

Moreover, Mr. Hickman is, in fact, an authorized licensee of the domain name registrant
because he was the lead developer and operator of the infringing domain names, rrbayc.com and
apemarket.com, as well as a co-partner in the RR/BAYC business venture.  In the *Ripps* Matter,
Mr. Hickman was described throughout the defendants' filings as a "co-creator" and "a partner

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

in the RR/BAYC Project."  *See* Ball Decl. Ex. 9 at 10 ("Mr. Hickman is a software programmer and a partner in the RR/BAYC Project."); *see also*, Ball Decl. Ex. 10 at ¶ 116 ("Together, we formed a four-person team of co-creators of the collection.").  Mr. Hickman's partners have repeatedly stated that Mr. Hickman was heavily involved in the creation and commercialization of rrbayc.com and apemarket.com.  *See* Ball Decl. Ex. 10 at ¶ 119 ("Mr. Hickman and Mr. Lehman created rrbayc.com"); Ball Decl. Ex. 11 at ¶ 126 ("Mr. Hickman and Mr. Lehman were in charge of technical aspects of the projects, such as coding the reservation contract ("RSVP contract") for *rrbayc.com*."); Ball Decl. Ex. 12 at ¶¶ 3, 7 ("Defendants, Hickman, and I collectively engaged in the creation and commercialization of [rrbayc.com and apemarket.com] . . . Ripps oversaw the Business Venture, by, in part, providing guidance and input on the design for [rrbayc.com and apemarket.com], which Hickman and I were working on in addition to the code.").

Mr. Hickman's own statements confirm that he is an authorized licensee.  Specifically, he admitted under oath in the *Ripps* Matter that he "helped Mr. Ripps by working on developing the rrbayc.com website, which was where collectors would be able to use the RSVP program to make reservations."  Ball Decl. Ex. 13 at ¶ 69.  He has also publicly tweeted about the infringing websites, particularly apemarket.com, telling users "we'll deploy @ApeMarketplace" and clarifying various technical aspects of the website.  Ball Decl. Exs. 14-15.  Therefore, there is sufficient evidence to show that Mr. Hickman is liable under the ACPA as an authorized licensee and that Mr. Hickman's defense lacks merit.  *See Hamptons Locations, Inc. v. Rubens*, 640 F. Supp. 2d 208, 214-15 (E.D.N.Y. 2009) ("there was ample testimony by [defendant] himself upon which the jury could have relied to find that [defendant] was the authorized licensee" where "the evidence showed that [defendant] was clearly involved in the development, launching, and operation of the website."); *see also*, *KB Home v. Smith*, No. 8:13-cv-2644-T-27EAJ, 2014 WL 1946622, at *3-4 (M.D. Fla. May 14, 2014) (finding that it could be plausibly inferred that defendant was an authorized licensee where defendant was described as a co-administrator of the webpage who, together with the registrant, improperly used the webpage in violation of the ACPA).

**b.  Mr. Hickman is not entitled to the ACPA safe harbor defense or licensed use defense because he does not hold a trademark license in the BAYC Marks, and he used the domain names in bad faith.**

The ACPA contains a safe harbor defense for registrants who "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." *See* 15 U.S.C. § 1125(d)(1)(B)(ii).  The Ninth Circuit has cautioned that the safe harbor defense should be invoked "very sparingly and only in the most unusual cases." *Lahoti v. VeriCheck, Inc.,* 586 F.3d 1190, 1203 (9th Cir. 2009) (citation omitted).  "[A] defendant who acts even partially in bad faith in registering a domain name is not, as a matter of law, entitled to benefit from the ACPA's safe harbor provision." *Id.* (citation omitted).

Here, there is no dispute that the domain names rrbayc.com and apemarket.com do not consist of the legal names of Mr. Hickman or his business partners.  Likewise, Mr. Hickman did not have a bona fide prior use of the domains because they were registered and used after Yuga Labs had already launched its BAYC NFT collection.  Mr. Hickman did not use rrbayc.com or apemarket.com for noncommercial or fair use purposes; instead, Mr. Hickman used the domains for commercial gain.[7]

In addition, Mr. Hickman does not have any trademark rights in the domain names.  As an initial matter, Mr. Hickman has offered no evidence to substantiate his assertion that he owns a BAYC NFT.  Mr. Hickman raises this purported fact for the first time in his Motion, despite his court-ordered obligation to produce such relevant information in the Subpoena Matter.  *See Yuga Labs, Inc. v. Ripps*, No. 2:23-cv-00010-APG-NJK (D. Nev.), Dkt. No. 29 (Order Granting Yuga Labs' Motion to Compel); Ball Decl. ¶ 11.  Plaintiff's counsel has repeatedly asked Mr. Hickman, and now his recently-noticed counsel, for the claimed information about his

---

[7] *See Yuga Labs, Inc. v. Ripps*, No. CV 22-4355-JFW(JEMx), 2023 WL 3316748, at *10-11 (C.D. Cal. Apr. 21, 2023) (granting summary judgment in favor of Yuga Labs as to its cybersquatting claim and holding that defendants acted in bad faith and are not entitled to the ACPA's safe harbor defense).  Mr. Hickman testified at trial in the *Ripps* Matter where liability had already been found, and the only remaining issue on the ACPA claim was how much Mr. Ripps and Mr. Cahen owed Yuga Labs in statutory damages.  As such, Mr. Hickman has no reasonable grounds to believe that his use of the domain names is in good faith.

FENWICK & WEST LLP
ATTORNEYS AT LAW

BAYC NFT; and they curiously continue to refuse to provide it.  Ball Decl. ¶ 11.  Here again, Mr. Hickman is culpable in ignoring his court-ordered obligations.

However, even if Mr. Hickman does own a BAYC NFT as he claims, Mr. Hickman does not hold a license to use Yuga Labs' BAYC Marks.  As held in the *Ripps* Matter, "[u]nder its Terms and Conditions, Yuga grants each BAYC NFT holder a ***copyright license*** for both personal use and commercial use with respect to their respective BAYC ape image, but ***not a trademark license*** to use the BAYC Marks."  *Yuga Labs, Inc. v. Ripps*, 2023 WL 3316748, at *6 (emphasis added).  Yuga Labs' former CEO has also explained publicly and under oath that what BAYC holders receive is a copyright license, not an all-encompassing intellectual property license.  *See* Ball Decl. Ex. 8 at 70:18-23 ("Q. Yuga told its members that its members had all of the intellectual property rights; right?  A. No. We told our members that they have a license for the copyright to the imagery.  That's what's in our terms.  That's what's in our FAQ.  That's what was posted in our Discord.  That's what has been communicated.").  Accordingly, if Mr. Hickman does, in fact, own a BAYC NFT, he may act in accordance with the Terms and Conditions; however, he has no right to use the BAYC Marks absent a separate trademark license agreement.  He has no such license.

### c.     This Court has personal jurisdiction over Mr. Hickman.

There is no dispute that the Court has personal jurisdiction over Mr. Hickman because he admits to owning a home in Henderson, Nevada and "many" other residences in Nevada.  R. Hickman Decl. ¶¶ 5-6.  Mr. Hickman does not deny that Nevada is the place where he intends to reside.  *See generally* R. Hickman Decl.  Mr. Hickman's own admissions establish that Nevada is his domicile, and he certainly has not proven otherwise.  *Gaudin v. Remis*, 379 F.3d 631, 636 (9th Cir. 2004) (holding that a person's domicile is their permanent home, where they reside with the intention to remain or to which they intend to return).  Travel without an intention to reside there does not transfer residence, and so his trips during the months of January to August 2023 (*see* R. Hickman Decl. ¶ 7) do not change his domicile.  *Gaudin*, 379 F.3d at 636..  Furthermore, Mr. Hickman waived this defense when he sought relief from the Court in his opposition to Yuga Labs' Motion for Default Judgment (*see* Dkt. No. 24 at 4 ("I urge you . . . to take appropriate

FENWICK & WEST LLP
ATTORNEYS AT LAW

action against the offending law firm. . . . I trust that you will take the necessary steps to address this serious issue.")), thereby submitting to the jurisdiction of this Court by failing to raise any defense of personal jurisdiction. *American Ass'n of Naturopathic Physicians,* 227 F.3d at 1107-08.

Although the defense of lack of personal jurisdiction is not the same as failure to effectuate service of process, *see id.*, to the extent Mr. Hickman's personal jurisdiction argument is premised merely on his complaints about service, those objections fail because service was properly effectuated. *See* supra Section IV.A.

### 3.   Yuga Labs and the public would be prejudiced if the default judgment were set aside.

Mr. Hickman's infringement and cybersquatting has caused irreparable harm to Yuga Labs' brand equity, goodwill, and its ability to control its reputation. At the core of this litigation is Yuga Labs' desire to regain control of its brand and put a stop to the ongoing harm. Therefore, Mr. Hickman's deliberate and willful seven-month delay has only served to exacerbate this harm. "Congress has recently made it easier for trademark plaintiffs to obtain an injunction, amending the Lanham Act to provide that such plaintiffs 'shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation.'" *Athena Cosms., Inc. v. AMN Distrib. Inc.*, No. 20-cv-05526-S VW-SHK, 2022 WL 4596549, at *12 (C.D. Cal. Aug. 16, 2022) (quoting 15 U.S.C. § 1116(a)). Not surprisingly then, "[i]njunctive relief is the remedy of choice for trademark . . . cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Moreover, injunctive relief will serve the public interest by preventing consumer confusion. *See Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.,*,.534 F. App'x. 633, 636 (9th Cir. 2013) ("An injunction that prevents consumer confusion in trademark cases . . . serves the public interest."). If permitted to vacate the judgment against him, Mr. Hickman's willful delay will preclude a resolution of his case on the merits on the same or similar schedule as his business partners, thereby extending the scope of the irreparable harm to Yuga Labs.

Fenwick & West LLP
Attorneys at Law

**V.    CONCLUSION**

By failing to respond to Yuga Labs' Complaint or otherwise participate in this action, Mr. Hickman brought about the default he now faces, and he did so with eyes wide open. Mr. Hickman has no one to blame but himself, and he must now be forced to live with the consequences of his actions.  For the foregoing reasons, Yuga Labs respectfully requests that this Court deny Mr. Hickman's Motion.


Dated:    September 13, 2023                    FENNEMORE CRAIG P.C.


                                               By: */s/ John D. Tennert III*
                                                   JOHN D. TENNERT III (NSB 11728)

                                                   and

                                                   FENWICK & WEST LLP
                                                   ERIC BALL (CSB 241327)
                                                   MOLLY R. MELCHER (CSB 272950)
                                                   KIMBERLY CULP (CSB 238839)
                                                   ANTHONY M. FARES (CSB 318065)

                                                   *Attorneys for Plaintiff Yuga Labs, Inc.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2023, the foregoing **PLAINTIFF YUGA LABS, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE OR SET ASIDE DEFAULT JUDGMENT** was electronically served upon the parties via the Court's e-CM/ECF system, addressed as follows:

Caleb L . Green
Dickinson Wright PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV  89169
Email:  cgreen@dickinson-wright.com

*Counsel for Defendant*
*Ryan Hickman*

*/s/ Susan Whitehouse*
An Employee of Fennemore Craig, P.C.

FENWICK & WEST LLP
ATTORNEYS AT LAW