UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| YUGA LABS, INC., | Case No. 2:23-CV-111 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| RYAN HICKMAN, | |
| Defendant(s). | |

Presently before the court is defendant Ryan Hickman ("defendant")'s motion to vacate or set aside default judgment. (ECF No. 31). Plaintiff Yuga Labs, Inc. ("plaintiff") filed a response (ECF No. 35), to which defendant replied (ECF No. 38).

**I.    Background**

This case arises out of plaintiff's claim for false designation of origin and cybersquatting against defendant relating to pending registered trademarks.

Plaintiff is a company responsible for developing the "smart contract" underlying a series of non-fungible tokens ("NFTs") called the "Bored Ape Yacht Club" ("BAYC"). (ECF No. 1 at 4). As the court understands the technology, NFTs are digital identifiers that provide the purchasing user with a unique piece of content—here, digital art. Plaintiff sold 10,000 unique BAYC NFTs for prices ranging from $169 to $236 each. (*Id.*).

Plaintiff's NFTs enjoyed wide public recognition, and popular press outlets featured them in publications. (*Id.* at 4-5). At auction, the NFTs were resold for millions of dollars, and well-known brands wanted to collaborate with plaintiff and capitalize on the success of the BAYC

**James C. Mahan**
**U.S. District Judge**

NFTs. (*Id.* at 5–6). Because of that recognition, plaintiff sought to register several trademarks in the BAYC NFTs, and at the time it filed the complaint, plaintiff had several pending trademark registrations for "BORED APE YACHT CLUB," "BAYC," "BORED APE," and three different logos in several different classes of goods. (*Id.* at 6–10). Plaintiff has used the marks in commerce since at least 2021, and consumers associate the marks with plaintiff. (*Id.* at 10—11).

Defendant is a Nevada resident. (*Id.* at 3). Alongside three non-parties to this suit, he created a separate smart contract ("RRBAYC RSVP") that underlies a series of NFTs called "RRBAYC." (*Id.* at 11). These "copycat" NFTs use different digital identifiers than those of plaintiff (and come from a different source), but they purport to provide the purchasing user with the same product as plaintiff's BAYC NFTs. (*Id.*). That is, defendant's copycat NFTs provide the user with the same images produced by plaintiff's BAYC NFTs. Defendant sold his NFTs on the domain "rrbayc.com"—a website that, in addition to its name, made use of several of plaintiff's other marks. (*Id.* at 11–12).

Defendant, alongside others, proceeded to sell these counterfeit NFTs on other online exchanges in direct competition with plaintiff while using plaintiff's marks to advertise his counterfeit NFTs. (*Id.* at 12–14). He did so despite knowledge that consumers would be confused into thinking they were buying legitimate BAYC NFTs. (*Id.*).

Defendant also designed a bespoke marketplace for his RRBAYC NFTs to be sold alongside original BAYC NFTs called "Ape Market," operating at the web address "apemarket.com." (*Id.* at 14–15). To access Ape Market, users were required to purchase a RRBAYC NFT. (*Id.*). Ape Market featured several of plaintiff's marks, and it appears defendant's primary goal was to mislead consumers such that they could not tell whether they were buying one of the original BAYC NFTs that was being resold or one of his counterfeit RRBAYC NFTs. (*Id.*).

**James C. Mahan**
**U.S. District Judge**

While engaging in this conduct, defendant used the social media platform X, formerly known as Twitter, to advertise his fraudulent NFTs. (*Id.* at 15–16). He created promotional material meant to imitate plaintiff's material and paid for promotion of his own products. (*Id.*). Moreover, he made public statements that "[intellectual property] in NFT is myth." (*Id.* at 16). In the end, defendant and his partners sold the counterfeit RRBAYC NFTs to more than 3,000 consumers, and he had an agreement to receive 15% of all the sales in exchange for his development and promotional work. (*Id.*).

Plaintiff brought its complaint alleging two causes of action: (1) false designation of origin under 15 U.S.C. § 1125(a) related to defendant's unauthorized use of plaintiff's marks in creating and promoting his counterfeit NFTs, and (2) cybersquatting under 15 U.S.C. § 1125(d) related to defendant's intentional use of two domain names that are confusingly similar to plaintiff's marks to mislead consumers. After being served, defendant failed to respond to the complaint. The clerk entered his default on March 20, 2023. (ECF No. 20). Plaintiff moved for default judgment based on the clerk's entry, and the court granted plaintiff's motion. (ECF No. 26 at 8).

Defendant now moves the court to vacate or set aside default judgment. (ECF No. 31). Defendant's motion hinges on two arguments: (1) the court lacked personal jurisdiction over him due to improper service, and (2) the *Falk* factors as described, *infra*, weigh in favor of vacating or setting aside default judgment. (*Id.* at 3).

Given the high standard for granting a motion to vacate default judgment and that the evidence remains virtually unchanged from when the court issued its order granting plaintiff's motion for default judgment, the court denies defendant's motion.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

## II. Legal Standard

When moving to vacate or set aside default judgment, the movant, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, has the burden of proving that he is entitled to relief. *See Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988).

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause . . . ." To determine if good cause exists, the court considers: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal quotations marks omitted); *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

The Ninth Circuit has clarified that "[t]his tripartite test is disjunctive. Hence, a finding that the plaintiff will be prejudiced, *or* that the defendant lacks a meritorious defense, *or* that the defendant's own culpable conduct prompted the default is sufficient to justify the district court's refusal to vacate a default judgment." *Cassidy*, 856 F.2d at 1415 (citing *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987)) (emphasis in original).

While the court considers the same factors prior to vacating an entry of default as it would a default judgment, the test is less stringent when a default judgment has not been entered. *See Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). Thus, after a default judgment has been entered, the defendant must also show that he is entitled to relief pursuant to Rule 60. *See* Fed. R. Civ. P. 55(c) ("[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).").

. . .

### III. Discussion

A. Service of process

Defendant posits that the court lacked personal jurisdiction over him due to improper service of process. "[A] defendant moving to vacate a default judgment based on improper service of process, where the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur." *Sec. and Exch. Comm'n v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007).

Defendant argues that service was improper because plaintiff (1) failed to serve the documents on an individual of suitable age and discretion and (2) abandoned the documents on defendant's doorstep. (ECF No. 31 at 3). The court will address each argument in turn.

*i. Suitable age and discretion*

Defendant believes that service of process was defective because the process server attempted to serve defendant's twelve-year-old child, whom defendant does not consider to be a person of suitable age and discretion. (*Id.* at 6-7).

Under Federal Rule of Civil Procedure 4(e)(2)(B), service of process of the complaint and summons may be made on an individual by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B).

In his motion, defendant claims that plaintiff obtained default judgment through gross misrepresentations to the court, specifically stating that defendant's daughter, who was the intended recipient of the pertinent papers, was fifteen years of years of age as opposed to twelve years of age. (ECF No. 31 at 7). Previously, the court cited *De George v. Mandata Co.*, 196 F.

James C. Mahan
U.S. District Judge

- 5 -

Supp. 192, 193 (E.D. Pa. 1961) (concluding service on a sixteen-year-old resident was suitable under the Federal Rules of Civil Procedure) in ruling that it "sees no reason to question the capacity of a fifteen-year-old occupant of the house, and finds the Jane Doe female with whom the document was left was "someone of suitable age and discretion." (ECF No. 20 at 1).

That the occupant of the house is twelve years old does not change the court's prior analysis. Defendant cites three cases, none of which is binding on this court, wherein each court interpreted "suitable age and discretion" as meaning an individual older than the child in this case. (ECF No. 31 at 8). Defendant makes the ironic claim that "[p]laintiff cannot provide any binding precedent, legal authority or supporting document demonstrating that a twelve year old [sic – hyphen] child is 'someone of suitable age and discretion' to accept service of process." (*Id.*). Defendant's cases are not binding precedent, and the court is thus not obligated to adopt their reasoning.

Predictably, plaintiff counters by citing cases wherein the deciding court held that twelve and thirteen-year-old persons are of suitable age and discretion for purposes of accepting service on behalf of a defendant. (ECF No. 35 at 11). Again, these cases are not binding on the court.

However, plaintiff buttresses its argument by analyzing the actions of the child as described in the process server's affidavit. The process server noted that the child told him she "was not signing for anything." (ECF No. 35-2 at 2). It is reasonable to interpret this statement as the child's knowing that the documents were of high importance. Furthermore, the child was taking out the trash, unsupervised, in the evening. (*Id.* at 1). These actions hint that she was of suitable age and discretion to receive the papers.

**James C. Mahan**
**U.S. District Judge**

- 6 -

The court sees no reason to deviate from its previous ruling granting default judgment, especially considering defendant has the burden of proving that he is entitled to relief. *See Cassidy*, 856 F.2d at 1415.

> ii. *Service of complaint and summons*

Defendant next avers that the process server abandoned the documents on defendant's porch windowsill, violating Federal Rule of Civil Procedure 4(e)(2)(B). In determining if service is proper under Federal Rule of Civil Procedure 4(e)(2), courts will consider the "placement of the summons and complaint within the defendant's immediate proximity." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1136 (9th Cir. 2009). Courts also expect plaintiffs to make reasonable, good-faith efforts to leave the papers with the defendant. *Id.*; *see Morgan v. City of Henderson Det. Ctr.*, No. 2:09-cv-01392-GMN-PAL, 2011 WL 1626560, at *2 (D. Nev. Apr. 27, 2011).

In its order granting plaintiff's motion for default judgment, the court found the exhibit containing screenshots of a surveillance video showing documents blowing in the wind on defendant's porch unpersuasive. (ECF No. 26 at 4-5). Specifically, the court noted it was unclear what those documents were and on which date the surveillance footage was taken. (*Id.* at 5). The court reasoned, "[s]imply providing unauthenticated pictures of documents on a porch is not enough to overcome the sworn affidavit of the process server." (*Id.*).

The video provided by defendant as an exhibit to his current motion presents more questions. The total time of the video is nine seconds, and it contains neither audio nor a timestamp. (ECF No. 32). The video simply depicts the process server dropping the papers on a windowsill or porch-like structure at the front of defendant's residence. (*Id.*). The process server swore in his affidavit that he showed the child the documents within her clear view and informed

**James C. Mahan**
**U.S. District Judge**

her he was leaving them by the front door. (ECF No. 35-2 at 1-2). Again, the video, which may have been edited to exclude the process server's interactions with the child, is not enough to overcome his sworn affidavit. Service was proper, and the court has personal jurisdiction over defendant.

B. *Falk* factors

The courts finds that defendant's second argument, that the *Falk* factors favor vacating default judgment, also lacks muster. There are three factors in the *Falk* analysis: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party. *Falk*, 739 F.2d at 463. Given that this test is disjunctive, meaning all three factors have to weigh in defendant's favor, the court can conduct its analysis with brevity.

Defendant's conduct was culpable and led to the entry of default judgment. The Ninth Circuit has held that conduct is culpable if a defendant has received actual or constructive notice of the filing and failed to answer. *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986).

On January 29, 2023, defendant publicly announced on X that he had been sued. (ECF No. 35-1 at 8). He also tweeted an excerpt from a news article describing the lawsuit. (*Id.* at 10). These actions are sufficient to demonstrate that defendant had received actual notice of the lawsuit and thus engaged in culpable conduct.

Next, there is no doubt that plaintiff would suffer prejudice if the court were to grant defendant's motion to vacate default judgment. Plaintiff has been very active in trying to stop others from using its trademark. The longer this case progresses, the higher the likelihood for confusion among the public as to who owns the trademark, thus causing plaintiff harm. Additionally, plaintiff is incurring more attorney's fees as litigation continues. Defendant waited

**James C. Mahan**
**U.S. District Judge**

- 8 -

seven months to file a responsive pleading.  To say that plaintiff would not suffer prejudice if the court chose to grant defendant's instant motion would contravene principles of fairness and comity.

Finally, the court need not analyze whether defendant may have a meritorious defense, as he has already failed to satisfy two of the three *Falk* factors.  Wading into the proverbially murky waters of analyzing complex issues such as whether he is liable for plaintiff's claims under the safe harbor defense or is the registrant licensee of the domain name in question, as he claims, would only complicate matters.

Assuming, *arguendo*, that defendant has raised the meritorious defenses that he is not liable for plaintiff's claims under the safe harbor defense or licensed use defense, he still falls short of satisfying all three prongs under the *Falk* analysis.  Because defendant fails this test, the court will not vacate or set aside default judgment.  *See Falk*, 739 F.2d at 463.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Ryan Hickman's motion to vacate or set aside default judgment (ECF No. 31) be, and the same hereby is, DENIED.

DATED February 1, 2024.

                                                         UNITED STATES DISTRICT JUDGE