JOHN D. TENNERT III (NSB No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG P.C.
9275 W. Russell Road, Suite 240
Las Vegas, NV  89148
Telephone: 702.692.8000
Facsimile: 702.692.8099

ERIC BALL (CSB No. 241327) (*pro hac vice*)
eball@fenwick.com
KIMBERLY CULP (CSB No. 238839) (*pro hac vice*)
kculp@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Fax: 650.938.5200

MOLLY R. MELCHER (CSB No. 272950) (*pro hac vice*)
mmelcher@fenwick.com
ANTHONY M. FARES (CSB No. 318065) (*pro hac vice*)
afares@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Fax: 415.281.1350

Attorneys for Plaintiff
YUGA LABS, INC.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| YUGA LABS, INC., | Case No.: 2:23-cv-00111-JCM-NJK |
| Plaintiff, | **PLAINTIFF YUGA LABS, INC.'S REPLY IN SUPPORT OF AMENDED MOTION FOR AN AWARD OF ATTORNEYS' FEES** |
| v. | |
| RYAN HICKMAN, | |
| Defendant. | |

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court has already concluded that Yuga Labs is entitled to receive its reasonable attorneys' fees under 15 U.S.C. § 1117(a).  *See* Dkt. No. 26 at 7; *see also*, Dkt. No. 30 at 2.  The only question for the Court on Yuga Labs' motion is what amount of fees is a reasonable award.  Yuga Labs calculated that a reasonable fee is no less than $47,178.44, as set forth in its opening brief.  For the reasons stated below, Mr. Hickman has failed to rebut the reasonableness of this request.

First, Mr. Hickman's interpretation of alternative service of process rules fails as a matter of law and any argument regarding the validity of the service of process on him has either been adjudicated or waived.  Mr. Hickman once again belabors the same points he has previously raised regarding the services of process – this time masquerading them as an unclean hands defense.  However, these arguments go to the propriety – not the amount – of the award.  *Whether* Yuga Labs is entitled to a reasonable fee award (it is) has already been adjudicated by this Court.  Mr. Hickman waived any new argument to the contrary.

Second, with respect to the ***only*** issue before the Court – ***what fee amount to award Yuga Labs*** – Mr. Hickman's characterizations of Yuga Labs' billing records are false.  He has suffered no prejudice where Yuga Labs' redactions only omit time entries wholly unrelated to its fees request.  In fact, the evidence Yuga Labs provided in support of its request allows the Court to determine the description of the work provided by Yuga Labs' attorneys and the reasonableness of the related fees.

Finally, Mr. Hickman does not rebut the reasonableness of Yuga Labs' fees request.  To further support its reasonable fees request, Yuga Labs has already provided significant discounts by deducting over $95,000 in legitimate fees to arrive at its overall fees request of $47,178.44.  Any concerns the Court has with Fenwick & West's ("Fenwick") billing rates has been addressed in the first instance by this $95,000 reduction.  The reasonableness of Fenwick's rates (and the total award requested) is further supported by the unique qualifications of counsel, who led the parallel litigation filed against Mr. Hickman's business partners in the Central District of

California.  As lead counsel in that case, Fenwick had unique knowledge of the facts and law of this case that no other firm in Nevada had and was thus singularly poised to be the most efficient law firm for the dispute.  Finally, Yuga Labs took steps to mitigate its litigation fees by having Fennemore Craig P.C. ("Fennemore") do much of the motion drafting and primarily using Fenwick on issues that significantly overlapped with those in the Central District of California case.  Yuga Labs should, therefore, be awarded all of the fees it seeks.

## II.     ARGUMENT AND AUTHORITIES

### A.      Yuga Labs Does Not Have Unclean Hands As A Matter Of Law, And Defendant Waived Any Argument That It Did.

The Court must reject Mr. Hickman's argument that Yuga Labs "has unclean hands" for three reasons.  First, this argument fails as a matter of law because Mr. Hickman misinterprets NRS § 14.090.  Second, Mr. Hickman waived his unclean hands defense by failing to raise it in prior briefings.  Third, Mr. Hickman attempts to relitigate issues that the Court has already adjudicated.

Mr. Hickman's deliberate misreading of NRS § 14.090 fails as a matter of law because the statute merely provides methods of *alternative* service, and this Court plainly held that service met the required standards.  *See* Dkt. 41 at 5-7.  Mr. Hickman's reliance on an alleged "failure" to comply with NRS § 14.090 1(b) as "serious misconduct" contradicts the text of the statute.  NRS § 14.090 (2) states: "The manner of service authorized by this section is supplemental to and does not affect the validity of any other manner of service authorized by law."  In granting Yuga Labs' Motion for Default Judgment, the Court concluded that service on Mr. Hickman was proper, and Mr. Hickman failed to "provide the court with any evidence contradicting the [process server's] declaration of service or the subsequent entry of clerk's default."  Dkt. No. 26 at 5.  And again, in denying Mr. Hickman's Motion to Vacate or Set Aside the Default Judgment, the Court reiterated that it "sees no reason to deviate from its previous ruling granting default judgment" and held that "[s]ervice was proper."  Dkt. No. 41 at 8.  Accordingly, Mr. Hickman's argument fails given that NRS §14.090 "does not affect the validity" of what the Court has already ruled was valid service of process.

1    Separately, Mr. Hickman's unclean hands defense again fails as a matter of law because

2    he fails to show how alleged violations of NRS §14.090 relate to Yuga Labs' trademark

3    infringement claims against him; indeed, they do not.  The defense of unclean hands requires a

4    showing that "the plaintiff's conduct is inequitable *and that the conduct relates to the subject*

5    *matter of its claims.*"  *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d 837, 847 (9th Cir.

6    1987) (emphasis added).  Here, Mr. Hickman's improper service argument concerns conduct that

7    is entirely outside the scope of Yuga Labs' trademark infringement claims.  Mr. Hickman cannot

8    plausibly argue that conduct relating to service within a gated community relates to Mr.

9    Hickman's unlawful use of Yuga Labs' trademarks.  As such, Mr. Hickman's unclean hands

10   defense is improper and should be rejected.

11   Moreover, Mr. Hickman's repeated attempts to relitigate decided issues regarding service

12   of process in defiance of the Court's orders are improper.  Mr. Hickman has had multiple

13   opportunities to address the issue of service of process; and indeed, has submitted three briefs on

14   the point.  *See* Dkt. No. 24 at 5-10; Dkt. No. 31 at 7; Dkt. No. 38 at 3-5.  In an attempt to undo

15   the Court's exceptional case finding under 15 U.S.C. § 1117(a), Mr. Hickman simply repackages

16   and rehashes the same arguments that he unsuccessfully raised in prior briefs, and which have

17   already been adjudicated by this Court.[1]  The Court's rulings are controlling, and Mr. Hickman

18   has no basis to undermine the Court's well-reasoned decisions.  *See Natural-Immunogenics*

19   *Corp. v. Newport Trial Group*, No. SACV 15-02034JVS(JCGx), 2020 WL 7263540, at *11

20   (holding that the court's earlier decision was the law of the case, and defendant's unclean hands

21   affirmative defense was foreclosed by the court's earlier ruling; "NTG cannot simply 'rehash

22   arguments already addressed by the [Court]'") (*quoting Swallow v. Torngren*, No. 17-CV-05261-

23

24

25   [1]  In granting Yuga Labs' Motion for Default Judgment, the Court concluded that service on Mr.

26   Hickman was proper, and that Mr. Hickman failed to "provide the court with any evidence
     contradicting the [process server's] declaration of service or the subsequent entry of clerk's

27   default." Dkt. No. 26 at 5.  In denying Mr. Hickman's Motion to Vacate or Set Aside the Default
     Judgment, the Court reiterated that it "sees no reason to deviate from its previous ruling granting

28   default judgment" and held that "[s]ervice was proper." Dkt. No. 41 at 8.

BLF, 2018 WL 2197614, at *10 (N.D. Cal. May 14, 2018), *aff'd*, 789 Fed. App'x 610 (9th Cir. 2020)).

Mr. Hickman cannot now, in opposition to a motion for attorneys' fees, raise a new substantive argument.  Pursuant to Federal Rule of Civil Procedure 12(b), "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading."  Under this Court's characterization of Mr. Hickman's Motion to Vacate or Set Aside the Default Judgment as a "responsive pleading" (*see* Dkt. No. 41 at 8-9), Mr. Hickman was required, under the Federal Rules, to assert his unclean hands defense in that motion or otherwise waive it.  Mr. Hickman failed to raise any such defense in that previous motion and should be barred from doing so now.

The unauthenticated photos of a gate that Mr. Hickman attaches to his Opposition also do not change the Court's prior rulings regarding proper service.  As an initial matter, Mr. Hickman had the opportunity to submit this purported evidence in connection with his Motion to Vacate or Set Aside the Default Judgment; but Mr. Hickman chose to not do so, thereby waiving his right to present such evidence now after the Court has already ruled on the issue of service.  Moreover, nothing in this exhibit corroborates Mr. Hickman's assertions, and Mr. Hickman's failure to authenticate it renders the evidence unreliable.  For example, it is unclear whether the photos even reflect Mr. Hickman's place of residence.  In addition, it is impossible to confirm from the photos alone whether the gate has a pedestrian gate from which the process server could have entered.  The photos also fail to negate the possibility that a resident of the gated community granted the process server access to the premises.  These concerns illustrate that the exhibit presents more questions than answers, and the Court need not consider such unreliable evidence.

**B.      Yuga Labs' Billing Records Supporting Its Fee Request Are Detailed And Unredacted, And Defendant Is Not Prejudiced.**

Every billing entry for which Yuga Labs seeks compensation is unredacted and provides sufficient detail for the Court to readily identify the exact amount of time expended by each billing attorney on tasks pertaining directly to the present lawsuit against Mr. Hickman.  The redactions to Yuga Labs' billing records pertain only to work unrelated to the present litigation

against Mr. Hickman and ***for which Yuga Labs is not seeking fees***.  As such, Mr. Hickman's assertions that it is "impossible to determine the description of the work provided and the reasonableness of the related fees," have no merit and the case law he cites is inapposite.  *See* Dkt. No. 47 ("Opp.") at 6.

In his Opposition, Mr. Hickman cites two block-billed time entries from Eric Ball to misleadingly suggest that the Court must deny Yuga Labs' motion because such "mass redactions to the descriptions of legal service provided violats [sic] Nevada Local Rule."  *Id.* Such a claim serves solely as a distraction because Yuga Labs does not seek fees for Eric Ball's time.  As Yuga Labs clearly stated in its opening papers, and which Mr. Hickman conveniently disregards in his Opposition, "to avoid any doubt about the veracity of its time entries, Yuga Labs is not seeking recovery for any entries where multiple tasks were combined into a single entry.  [Citation omitted.]  Yuga Labs is also not seeking fees for the entirety of the hours billed by the attorney with the highest billing rate, Eric Ball."  *See* Motion at 11; *see also*, Ball Decl. ¶¶ 19, 26.  Instead of challenging the legitimacy of Yuga Labs' relevant time entries in his Opposition, Mr. Hickman declined to do so – instead, he makes wholly unsupported characterizations of Yuga Labs' billing records and questions the reasonableness of time entries that ***are not at issue*** in this fees request.  Yuga Labs has fully complied with its duty under Nevada Local Rule 54-14, including by providing a spreadsheet that itemizes and describes the work performed in this case for which Yuga Labs seeks to recover its fees (*see* Ball Decl. Ex. 5). The Court should disregard Mr. Hickman's irrelevant and factually incorrect arguments.

C. **Yuga Labs' Fees Request Is More Than Reasonable And Already Reflects a Substantial Discount, Unique Qualifications of Counsel, And Litigation Prudence.**

To avoid any doubt about the reasonableness of its fees request, Yuga Labs seeks to recover reasonable fees that reflect significant voluntary deductions, unique qualifications of counsel, and prudent mitigation of litigation fees where appropriate.

1.      **Yuga Labs' Fees Are Reasonable Due To Its Voluntary Deductions.**

Yuga Labs voluntarily deducted over $95,000 in fees incurred litigating this case in three ways.  The first category of voluntary deductions include: entries where multiple tasks were combined into a single entry (*see* Ball Decl. ¶¶ 19, 26); the entirety of the hours billed by the attorney with the highest billing rate, Eric Ball (*see id.* ¶ 26); or work performed by timekeepers who spent less than five hours working on this case (*id.*).  These deductions alone amount to approximately $10,806.73 in fees that Yuga Labs could have sought from Mr. Hickman but it has deducted from its fees request.  The second voluntary deduction is reflected by the fact that Yuga Labs is only seeking to recover $5,000 of the over $15,000 spent on this fees request alone. *Id.* ¶ 30.  The third bucket is the fact that Yuga Labs is voluntarily not seeking to recover ***any*** fees for time spent successfully opposing Mr. Hickman's Motion to Vacate or Set Aside Default Judgment, which amounts to over $75,000 in additional fees not included in this fee request.  *Id.* ¶ 29.  In total, Yuga Labs has discounted over $95,000 in fees that it incurred in litigating this case.  It did this in an effort to mitigate any concerns over the reasonableness of Yuga Labs' fees request.  Therefore, Yuga Labs should be awarded all remaining fees it now seeks.

2.      **Yuga Labs' Fees Are Reasonable Based On The Unique Qualifications Of Counsel.**

In his opposition, Mr. Hickman does not dispute that the hours spent by Yuga Labs' counsel for work performed in connection with its fees request is reasonable and only disputes the reasonableness of Fenwick's hourly rates.  With respect to Fenwick's rates, Mr. Hickman acknowledges that "rates outside the forum may be used if local counsel was unavailable, either because they are unwilling ***or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.***"  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)) (emphasis added).  Here, Mr. Hickman conflates his blatant trademark infringement with "simple trademark infringement" that "requires no special skills or experience."  Opp. at 9.  This is a mischaracterization of both the law and the unique demands of this case.  Although Mr. Hickman's liability in this case was plain, stopping his infringement and fashioning novel

injunctive relief involved precedent-setting legal questions central to Yuga Labs' tentpole brand and its role as an industry leader in the NFT space.  And as set forth in Yuga Labs' opening brief, NFT trademark litigation is an inherently new and unique area of law that is specialized and frequently deals with cutting-edge legal issues of first impression.  Fenwick, having unique experience with blockchain and NFT clients, was singularly qualified to handle the issues in this case.

Mr. Hickman fails to provide evidence to sufficiently rebut the reasonableness of Fenwick's billing rates.  The party opposing the fees request bears the burden of rebuttal "that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citations omitted).  Mr. Hickman baselessly asserts that there are "several national and international law firms, with locations in Nevada" that "have significant expertise in emerging technology, blockchain, and NFT related litigation" but fails to provide a single billing rate for any of the exemplary firms that he claims have a practice comparable to Fenwick's.  Mr. Hickman failed to meet this burden and his bald reference to purportedly comparable Nevada law firms is unpersuasive.

Furthermore, given that the facts of this lawsuit against Mr. Hickman are inextricably intertwined with the parallel lawsuits against Mr. Hickman's business partners – lawsuits for which Fenwick is Yuga Labs' counsel of record – there was an inherent efficiency in engaging the same Fenwick attorneys to argue certain aspects of this case against Mr. Hickman.  This is illustrated by the fact that while Mr. Hickman "waited seven months to file a responsive pleading" (Dkt. No. 41 at 8-9), there were already 417 docket entries in the related litigation against Mr. Hickman's business partners (the "*Ripps* Matter"), encompassing, among other things, discovery disputes, summary judgment briefings, and pre-trial and post-trial submissions. These docket entries reflect only a fraction of Fenwick counsel's overall engagement with the *Ripps* Matter.  Counsel also developed extensive knowledge of the case in attending to the entirety of fact and expert discovery; preparing for and attending 15 depositions, including a deposition of Mr. Hickman; preparing for and attending trial where Mr. Hickman was a key

witness for the defendants; and preparing for and attending conferences with opposing counsel. By the time Yuga Labs filed its Complaint against Mr. Hickman in January 2023, Yuga Labs had already incurred millions of dollars in attorneys' fees for work performed by the Fenwick attorneys in litigating the *Ripps* Matter.  If Yuga Labs had instead turned to a Nevada-based firm, with presumably lower hourly rates, the attorneys would have had to spend significantly more time familiarizing themselves with the historical facts surrounding the case.  "While it is impossible to surmise exactly how much time this would have taken a new firm, the additional hours would have at least partially offset the higher hourly rate charged by [Fenwick]'s attorneys."  *See Yenidunya Invs., Ltd. v. Magnum Seeds, Inc.*, No. 2:11–1787 WBS, 2012 WL 538263, at \*7 (E.D. Cal. Feb. 17, 2012) (granting request to use out-of-forum rates because attorneys had prior history with both the client and the dispute at issue), *aff'd*, 562 Fed. App'x 560 (9th Cir. 2014).  Because of Fenwick's extensive prior dealings with Yuga Labs, and specifically the issues underlying the litigation against Mr. Hickman, it is appropriate to apply the discounted hourly rates Fenwick charged to Yuga Labs to the calculation of reasonable attorneys' fees in this matter.

> **3.  Yuga Labs' Fees Are Reasonable Due To Its Prudent Mitigation Of Litigation Fees.**

Where Yuga Labs could reasonably mitigate fees, it made an effort to do so, as evidenced by the fact that it appointed Fennemore (a firm whose rates Mr. Hickman agrees are reasonable) to lead much of the drafting for Yuga Labs' Motion for Default Judgment.  *See* Ex. 5 at 4-5.  For other matters, such as those that significantly overlapped with the *Ripps* matter, Fenwick took the lead.  For example, Fenwick's attorneys led the drafting for the Complaint because the issues tracked closely to those in the Central District of California.  Indeed, this Court recognized in its Order Denying Hickman's Motion to Vacate, "Plaintiff has been very active in trying to stop others from using its trademark.  The longer this case progresses, the higher the likelihood for confusion among the public as to who owns the trademark, thus causing plaintiff harm."  Dkt. No. 41 at 8.  Therefore, although Fenwick's hourly rates may be higher than the Nevada market rates, those rates are still reasonable in this case because Fenwick was the only law firm with

direct knowledge of the extensive and complex factual record and legal issues relating to Yuga Labs' trademark infringement claims in the underlying and parallel litigations against Mr. Hickman and his business partners.  More to the point though, the total fee request is reasonable.

**III.     CONCLUSION**

Yuga Labs' request for attorneys' fees is reasonable based on the skill and experience of counsel at Fenwick and Fennemore and due to the demands and novel issues in this case. Accordingly, the Court should grant Yuga Labs the entirety of its fees request and award Yuga Labs $47,178.44 in fees.

Dated:   March 15, 2024                              FENNEMORE CRAIG P.C.


By: */s/ John D. Tennert III*
     JOHN D. TENNERT III (NSB 11728)

     and

     FENWICK & WEST LLP
     ERIC BALL (CSB 241327)
     MOLLY R. MELCHER (CSB 272950)
     KIMBERLY CULP (CSB 238839)
     ANTHONY M. FARES (CSB 318065)

     *Attorneys for Plaintiff Yuga Labs, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2024, the foregoing **PLAINTIFF YUGA LABS, INC.'S REPLY IN SUPPORT OF ITS AMENDED MOTION FOR AN AWARD OF ATTORNEYS' FEES** was electronically served upon the parties via the Court's e-CM/ECF system, addressed as follows:

Caleb L . Green
Dickinson Wright PLLC
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV  89169
Email:  cgreen@dickinson-wright.com

*Counsel for Defendant*
*Ryan Hickman*

*/s/ Madelaine A. Shek*
An Employee of Fennemore Craig, P.C.